## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

## No. 96-60578
_____

**WILLIAM DRAKE,**

                                                 **Plaintiff-Appellant,**

**versus**

**ADVANCE CONSTRUCTION SERVICE, INC.;
ARROW CONSTRUCTION, INC.,**

                                                 **Defendants-Appellees.**

_____

**Appeal from the United States District Court
for the Northern District of Mississippi**

_____

**July 2, 1997**

Before SMITH, BARKSDALE, and BENAVIDES, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

For the summary judgment awarded Advance Construction Services, Inc., and Arrow Construction, Inc., against William Drake in this Mississippi diversity action, we conclude that material fact issues exist for Drake's employment termination (allegedly for refusing to falsify reports to the Government); and that, if he was so discharged, this falls within Mississippi's public policy exception to its employment-at-will doctrine. Accordingly, we **REVERSE** and **REMAND**.

I.

In 1994, the United States Army Corps of Engineers (COE) contracted with Arrow for the performance of channel improvements at a creek in Mississippi. Although Arrow subcontracted part of

the work, it remained responsible for laying the filter cloth, bedding material, and rip-rap (rock).

Arrow employed Drake in July 1994 to serve as Quality Control Manager. Drake did not have a written employment contract for a specific duration. His duties included preparing and submitting to the COE a daily, form Quality Control Report (QCR), including a description of any deficiencies in the work performed that day.

On 20 December 1994, Drake observed deficiencies in the placement of rip-rap. He reported on his QCR for that day that rip-rap was being dropped from above the slope, resulting in displacement of the bedding stone and tearing of the filter cloth. The next day, Drake again included similar deficiency information in his QCR. Two days later, he was discharged.

In this action against Arrow and Advance (alleged to be Arrow's alter ego), Drake alleged that, on 20 December 1994, Arrow's vice president instructed him not to report deficiencies in the work in his QCRs; and that he was discharged because he filed accurate reports describing the deficiencies. He claimed that his discharge was in violation of the public policy of Mississippi because he refused to commit an illegal act.

The parties consented to proceed before a magistrate judge. Summary judgment was awarded Arrow and Advance. The court concluded that, based on the summary judgment record, the "[d]eliberate failure to note a deficiency in the placement of rip-rap, while perhaps unprofessional or immoral, is not an illegal act".

II.

Drake contends, *inter alia*, that genuine issues of material fact exist on whether he was discharged for refusing to commit an illegal act. (In granting summary judgment, the court did not address either Advance's motion for partial summary judgment on the ground that it is not a proper party to this action, or Drake's contention that Arrow is the alter ego of Advance. We need not do so, either, because a remand is necessitated by our conclusion that genuine issues of material fact exist on Drake's discharge.)

We review a summary judgment *de novo*, using the same criteria as the district court and viewing all facts, and the inferences to be drawn from them, in the light most favorable to the non-movant, Drake. *E.g.*, **Forsyth v. Barr**, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The judgment is proper if, based on the summary judgment record, there is no material fact issue and the movant "is entitled to a judgment as a matter of law". FED. R. CIV. P. 56(c).

Mississippi follows "the common law rule that a contract for employment for an indefinite term may be terminated at the will of either party". **Kelly v. Mississippi Valley Gas Co.**, 397 So. 2d 874 (Miss. 1981). But, in **McArn v. Allied Bruce-Terminix Co., Inc.**, 626 So. 2d 603, 607 (Miss. 1993), the Mississippi Supreme Court created a "narrow public policy exception" to that rule; an employee discharged either for refusing to participate in an illegal act, or for reporting illegal acts of his employer to the

- 3 -

employer or anyone else, is not barred by the employment-at-will doctrine from bringing a tort action against his employer. ***Id.***

Drake contends that the first prong of the exception (refusal to participate in an illegal act) is applicable, because he was discharged for refusing to follow Arrow's instructions to omit deficiencies from the QCRs submitted to the COE. According to Drake, submission of a QCR which falsely reported no deficiencies in Arrow's work would have constituted a violation of 18 U.S.C. § 1001, which provides:

> (a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
>
> > (1) falsifies, conceals, or covers up by any trick, scheme, or device a *material* fact;
> >
> > (2) makes any *materially* false, fictitious, or fraudulent statement or representation; or
> >
> > (3) makes or uses any false writing or document knowing the same to contain any *materially* false, fictitious, or fraudulent statement or entry;
>
> shall be fined under this title or imprisoned not more than 5 years, or both.

(Emphasis added.)

### A.

Accepting Drake's factual scenario as true for summary judgment purposes, the appellees respond that such concealment of deficiencies still would not have constituted a violation of § 1001 because it was not "material", inasmuch as the COE either knew

- 4 -

about, or would have discovered, the deficiencies. A false statement is "material" if it has "a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed". *United States v. Gaudin*, 515 U.S. 506, ___, 115 S. Ct. 2310, 2313 (1995).

The appellees maintain that omission of deficiencies from Drake's QCRs would not tend to influence the COE's decisionmaking process. They claim that the COE constantly had its own representatives at the job site monitoring and inspecting the project; that a COE representative was an eyewitness to the alleged deficiencies and told Arrow that the COE was not going to pay for work performed in that manner; and that the COE will not pay for work until it has first inspected and approved it.

Drake produced summary judgment evidence, however, that the COE's knowledge of the deficiencies came from his QCRs; that the COE inspector was not at the jobsite all day, every day, and the COE does not have the resources to inspect the entire project (seven to eight miles long) and, therefore, the COE depends on the contractor's QCRs to inform it about deficiencies in the work; that, if Drake had failed to report the deficiencies, the displaced bedding stone and torn filter cloth could have been covered by rip-rap and not discovered by the COE; and that, as a result, the COE would have paid Arrow for work that did not comply with the contract plans and specifications.

Although Drake testified in his deposition that a COE representative was "there every day" and "was there on the first

day" (presumably referring to 20 December, the first date Drake reported deficiencies in a QCR), he also testified that the COE inspector was not there every day. The exhibits to his deposition, which are part of the summary judgment record, reflect that the COE did not inspect the project every day. Those exhibits include copies of Drake's diary, which reflects that there was no COE inspection on 27 October and 3 November 1994, as well as the COE's 20 December daily inspection report and Drake's QCR for that date, both of which reflect that there was no COE inspection on 20 December.

Also included among Drake's evidence in opposition to summary judgment were excerpts from the deposition of Arrow's president, who testified that, if the quality control coordinator were instructed by his superior not to identify deficiencies, he would not be doing his job properly and it "*would be illegal*". (Emphasis added.) This testimony is consistent with the "Contractor's Certification" signed by Drake on the form QCRs:

> I certify that the above report is complete and correct and that all material and equipment used, work performed and tests conducted during this reporting period were in strict compliance with the contract plans and specifications except as noted above.

In short, material fact issues exist as to the materiality of the information in issue.

B.

In the alternative, the appellees contend that Mississippi's public policy exception applies only to illegal acts constituting fraud on a third party which results in pecuniary gain, and should not be extended to other illegal acts. Such fraud appears to be the situation at hand. In any event, their contention is not supported by **McArn**. There, the Mississippi Supreme Court stated that the exceptions apply "where the illegal activity either declined by the employee or reported by him affects third parties among the general public, though they are not parties to the lawsuit." **Id**. Drake submitted evidence that, if he had not reported the deficiencies in the QCR, the COE might not have discovered them and could have been misled into paying Arrow for substandard work, which would have affected not only the COE, but also the taxpayers.

Contrary to the appellees' assertion, **McArn** did not limit application of the public policy exception to employees who are discharged for refusing to commit fraud for monetary gain; instead, the Mississippi Supreme Court reversed the directed verdict in favor of the defendant and remanded for a determination of whether McArn "was actually discharged for a refusal to commit deceptive, fraudulent *or* illegal actions against the clients of [the defendant] or for reporting same." **Id**. (emphasis added); *see also* **Willard v. Paracelsus Health Care Corp.**, 681 So. 2d 539, 542 (Miss. 1996) (reversing verdict for employer and remanding for new trial because retaliatory discharge and punitive damages instructions should have been given to jury in that evidence

- 7 -

suggested that employees "were fired in retaliation for reporting an illegal act of their employer, i.e., forgery and financial irregularities").

III.

For the foregoing reasons, the judgment is **REVERSED** and the case is **REMANDED** for further proceedings.

*REVERSED and REMANDED*