**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 98-60758
Summary Calendar
_____

ANTHONY MACKEY,

Plaintiff-Appellant,

VERSUS

DAVID OWENS d/b/a
TUPELO TIRE LOADING SERVICE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
(1:98-CV-166-JAD)
_____

June 2, 1999

Before DAVIS, DUHÉ, and PARKER, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Anthony Mackey appeals from a final judgment of the magistrate court granting summary judgment against him on his action to recover damages for discharge in violation of public policy. For reasons that follow, we affirm.

I.

Defendant-Appellee Tupelo Tire Loading Service ("TTLS") is a minority general partnership consisting of approximately eighteen general partners, of which Defendant-Appellee David Owens is the

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

managing partner. The partnership contracts with various trucking companies to load and unload tractor-trailers at the Cooper Tire plant in Tupelo, Mississippi. In addition to its general partners, TTLS periodically employs a small number of employees who generally work for a few weeks or months and are then invited to become partners.

Mackey began working for TTLS in 1996, and worked there until his termination in May 1998. TTLS alleges that during this time Mackey was treated as a general partner, received distributions of profits along with the other general partners, and received Internal Revenue Service Schedules K-1 on the money he received from the partnership. Mackey denies that he was ever a partner at TTLS.

In May 1998, Owens called a meeting at which he instructed Mackey and others to sign a document indicating that they were partners. Mackey refused to sign the document. He alleges that the document was fraudulent, and was designed to defraud the Internal Revenue Service. Two days later, Mackey missed work due to a back injury. Owens terminated Mackey, stating as his reason that Mackey had missed work. Mackey contends that this was just a pretext, and that he was actually discharged for refusing to sign the fraudulent document.

Mackey filed the present action alleging discharge in violation of public policy in May 1998. Owens filed his answer and defenses in August 1998. Along with the answer and defenses, Owens filed a motion to dismiss. Attached to the motion were four exhibits. Exhibit 1 was a copy of Mackey's Complaint. Exhibit 2 was

2

a document styled "General Articles of Partnership" dated April 30, 1990, along with an addendum dated May 7, 1998. Exhibits 3 and 4 were Internal Revenue Service Schedules K-1 setting forth partnership distributions received by Mackey in 1996 and 1997.

Mackey filed a motion for additional time to respond to the motion to dismiss, which the district court granted. The parties then consented to trial before a magistrate judge. Mackey filed a second motion for additional time to respond to the motion to dismiss, which the magistrate judge granted. Mackey ultimately filed his response to the motion to dismiss in October 1998. The magistrate judge elected to treat the motion to dismiss as a motion for summary judgment, and granted summary judgment on November 20, 1998. This appeal followed.

## II.

The central focus of Mackey's appeal is on the magistrate judge's decision to convert Owens's motion to dismiss into a motion for summary judgment. Mackey argues that this decision was erroneous for two reasons. First, he contends that the three documents on which the magistrate judge relied (the General Articles of Partnership and the two Schedules K-1) were unauthenticated, and therefore could not properly be considered on summary judgment. This argument is unpersuasive. Although Mackey correctly observes that inadmissible evidence may not be considered on summary judgment, Horta v. Sullivan, 4 F.3d 2 (1st Cir. 1993), the fact that a document is unauthenticated does not mean that it is inadmissible for purposes of summary judgment. Admissible evidence may be submitted in an inadmissible form at the summary

3

judgment stage, although at trial such evidence must be submitted in admissible form. See McMillan v. Johnson, 88 F.3d 1573, 1584 (11th Cir. 1996). All of the documents attached to Owens's motion to dismiss could have been easily authenticated through testimony at trial. Thus, the documents were admissible even though submitted in inadmissible form. Moreover, this court has recognized that "[d]ocuments submitted in support of a motion for summary judgment may be considered even though they do not comply with the requirements of Rule 56 if there is no objection to their use." Equia v. Tompkins, 756 F.2d 1130, 1136 (5th Cir. 1985). At no time prior to the magistrate judge's decision did Mackey move to strike the documents or argue that their consideration was inappropriate. In light of Mackey's failure to object, the magistrate judge was entitled under Equia to consider the documents on summary judgment.

Second, Mackey contends that the magistrate judge failed to provide adequate notice that the motion to dismiss would be treated as a motion for summary judgment. Again, this argument is unpersuasive. A motion to dismiss may be converted into a motion for summary judgment so long as the notice and hearing requirements of Rules 12(b) and 56(c) of the Federal Rules of Civil Procedure are followed. Estate of Smith v. Tarrant County Hosp. Dist., 691 F.2d 207, 208 (5th Cir. 1982). The requirements of both rules were satisfied in this case.

Rule 12(b) states, in pertinent part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all

4

material made pertinent to such a motion by Rule 56. Nothing in this rule requires that a party be given express notice by the district court that it intends to treat a motion to dismiss as a motion for summary judgment. Indeed, given the rule's express declaration that a motion to dismiss <u>shall</u> be treated as a motion for summary judgment where matters outside the pleadings are presented to and not excluded by the court, the simple act of placing matters outside the pleadings before the court provides adequate notice that a motion to dismiss may be converted into a motion for summary judgment. <u>See</u> <u>Gay v. Wall</u>, 761 F.2d 175 (4th Cir. 1985) ("When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment."). Here, Owens attached three documents besides the complaint to his motion to dismiss. That was more than sufficient to put Mackey on notice that Owens's motion to dismiss might be treated as a motion for summary judgment under Rule 12(b).

Rule 56(c) requires that a motion for summary judgment be served at least 10 days prior to the time fixed for hearing, so that the adverse party may have time to present opposing evidence. Here, Mackey had over two months between the date that the motion was served and the date that summary judgment was granted in which to object or to present opposing evidence. That he chose not to do so does not invalidate the magistrate judge's decision. This court confronted a similar situation in <u>Isquith v. Middle South Utilities, Inc.</u>, 847 F.2d 186 (5th Cir. 1988). In <u>Isquith</u>, the defendants filed a motion to dismiss, attached to which were

5

various affidavits and supporting documents. The district court treated the motion as a motion for summary judgment, and granted summary judgment. On appeal, this court stated that the notice requirement of Rule 56(c) does not mean that a party is "entitled to notice that the court would, as opposed to could, treat the motion as one for summary judgment." Id. at 195. Rather, we found that "[t]he proper question . . . is whether the plaintiffs had ten days' notice after the court accepted for consideration matters outside the pleadings." Id. at 196. Here, as in Isquith, the plaintiff had well over ten days' notice after the district court accepted for consideration the General Articles of Partnership and the two Schedules K-1. Rule 56(c)'s notice requirement was therefore satisfied, and the magistrate judge acted properly in treating the motion to dismiss as a motion for summary judgment.

III.

A district court's decision to grant summary judgment is reviewed de novo. Moore v. Eli Lily & Co., 990 F.2d 812, 815 (5th Cir. 1993). Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden rests upon the party seeking summary judgment to show the absence of a genuine issue of material fact in the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once such a showing has been made, the burden shifts to the non-moving party to demonstrate, by specific facts, that a genuine issue of material

6

fact exists. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Id.</u> at 248 (citation omitted).

Mackey's theory of liability rests on 18 U.S.C. § 1001 and this court's decision in <u>Drake v. Advance Construction Service, Inc.</u>, 117 F.3d 203 (5th Cir. 1997). In <u>Drake</u>, this court recognized a "narrow public policy exception" to Mississippi's employment-at-will doctrine; namely, that "an employee discharged either for refusing to participate in an illegal act, or for reporting illegal acts of his employer to the employer or anyone else, is not barred by the employment-at-will doctrine from bringing a tort action against his employer." <u>Id.</u> at 204 (citing <u>McArn v. Allied Bruce-Terminix Co., Inc.</u>, 626 So.2d 603, 607 (Miss. 1993)). Section 1001 is a criminal provision prohibiting, <u>inter</u> <u>alia</u>, the making or use of "any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry" in any matter within the jurisdiction of the government of the United States. The <u>Drake</u> panel expressly recognized that the Mississippi public policy exception extends to employees who refuse to violate Section 1001. 117 F.3d at 204. Mackey alleges in his complaint that the document Owens instructed him to sign was "a fraudulent document designed to defraud the Internal Revenue Service of the United States." As such, he claims, his termination for refusal to sign the document gives rise to a tort action under <u>Drake</u>.

The magistrate judge found, and we agree, that there is no genuine issue of material fact sufficient to sustain Mackey's

7

claim. Central to Mackey's action is his allegation that the document Owens instructed him to sign--which identified Mackey as a "partner" at TTLS--was false or fraudulent. If the document was not false or fraudulent, then signing it could not have given rise to a Section 1001 violation, and hence termination for refusal to sign could not give rise to a Drake action. The 1996 and 1997 Schedules K-1 that Owens attached to his motion to dismiss identify Mackey by name as a general partner at TTLS and list the partnership distributions that Mackey received each of those years. These documents satisfy Owens's burden to show the absence of a genuine issue of material fact. If Mackey was in fact a general partner at TTLS, then the document he refused to sign identifying him as such could not have been false or fraudulent.

The burden thus shifts to Mackey to demonstrate by specific facts that a genuine issue of material fact exists. Mackey has not met this burden. He argues that there is no evidence that these forms were ever given to him or that he knew of their existence. Alternatively, he argues that a jury could conclude that Mackey, as an unskilled laborer, did not understand the significance of the Schedules K-1. These arguments are conjecture, not specific facts. Conjecture alone is insufficient to defeat summary judgment. Lechuga v. Southern Pacific Transportation Co., 949 F.2d 790, 798 (5th Cir. 1992).

In short, Mackey has failed to meet his burden to demonstrate by specific facts that a genuine issue of material fact exists as to whether the document he refused to sign was false or fraudulent. The Schedules K-1 identify him as a general partner, and he points

to no specific fact or piece of evidence contradicting that identification. As such, no rational trier of fact could find in favor of Mackey, and the magistrate judge's final judgment in favor of Owens must be affirmed.

AFFIRMED.