**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 98-20497**
_____

**HC GUN & KNIFE SHOWS, INC.,
d/b/a High Caliber Gun & Knife Shows, Inc.,
TODD BEAN, individually and d/b/a High
Caliber Gun & Knife Shows, d/b/a
High Caliber Gun & Knife Shows, Inc.,**

**Plaintiffs-Appellees,**

**versus**

**CITY OF HOUSTON,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court
for the Southern District of Texas**
_____

January 20, 2000

Before DUHÉ, BARKSDALE, and DENNIS, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Primarily at issue is whether Texas law preempts a City of Houston ordinance regulating gun shows conducted on city property. The City contests the partial summary judgment granting declaratory and injunctive relief to HC Gun & Knife Shows, Inc., and Todd Bean, individually and d/b/a High Caliber Gun & Knife Shows; the judgment on a jury verdict awarding lost profits to Appellees; and attorney's fees awarded Appellees. We **AFFIRM**.

I.

Bean and his successor corporation (Appellees) have held gun and knife shows since 1988. From 1990 until late 1993, they conducted ten at the City's George R. Brown Convention Center (the center).

In June 1993, the Houston City Council passed an ordinance requiring all persons attending gun shows at city-owned facilities, *inter alia*: (1) to sign a form declaring the firearms in their possession (registration requirement); and (2) for all firearms brought to such shows, to either remove the firing pins or install key-operated trigger locks (disabling requirement). HOUSTON, TEX. CODE OF ORDINANCES § 12-24.

Bean conducted three shows at the center in 1993, but canceled the fourth, scheduled for that December, because of the ordinance's registration and disabling requirements. No shows were held at the center between December 1993 and March 1997.

In January 1996, Appellees filed this action in state court, alleging that the ordinance's registration and disabling requirements effectively prevented them from holding shows on city-owned property: the registration requirements would cause delay, expense, and impositions that would deter attendance; removal of the firing pins would damage many of the guns shown and traded at the shows; and installation of trigger locks would be cost prohibitive and result in delays that would greatly reduce attendance. The City removed this action to federal court.

In early 1997, the district court denied summary judgment for the City and granted partial summary judgment for Appellees. Declaratory relief was premised on the ordinance being preempted by TEX. LOCAL GOV'T CODE § 215.001, which prohibits, *inter alia*, municipal regulation of the "transfer, private ownership, keeping, transportation, ... or registration of firearms"; and on the

2

ordinance being violative of the commercial speech protections guaranteed by the United States and Texas Constitutions. The City was permanently enjoined from enforcing the ordinance.

Following a trial on damages that May, the jury awarded $329,000 for lost profits. In addition, the court awarded Appellees $54,442 (stipulated amount) for attorney's fees and expenses.

## II.

The City contends that the preemption and commercial speech holdings are erroneous; that the court abused its discretion by refusing to order production of documents relating to, and by excluding evidence of, Appellees' gross revenues and expenses, including with respect to shows conducted outside the Houston area; that the evidence is insufficient to support the verdict; and that, because the judgment must be reversed, so must the fees award.

## A.

The summary judgment is reviewed *de novo*, pursuant to the same standard applied by the district court. *E.g.*, **Drake v. Advance Const. Service, Inc.**, 117 F.3d 203, 204 (5th Cir. 1997). It is proper when the summary judgment record, viewed in the light most favorable to the non-movant, establishes that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law". FED. R. CIV. P. 56(c); **Drake**, 117 F.3d at 204.

The ordinance requires applicants seeking to use the center for gun shows to execute an agreement which includes, *inter alia*,

3

covenants (1) to provide and compensate off-duty City police officers to provide security for the show; (2) that all persons in attendance will be required to sign a form declaring all weapons in their possession; and (3) to comply with the city's regulations, which require either the removal of firing pins or the installation of trigger locks on all firearms brought into the facility.[1]

---

[1]The ordinance states, in pertinent part:

> (a) Each approved applicant for the use of a facility to conduct a gun show shall be required to execute a special form of occupancy agreement that incorporates the requirements generally applicable to the rental of facilities and the additional requirements established in this section. The agreement shall include:
>
> > (1) A covenant to provide a specified minimum number of off-duty city police officers who shall be compensated solely at the occupant's expense and shall provide
>
> security for the gun show; the number shall be approved by the director and shall at least be based upon the number of expected exhibitors, the expected number of patrons and the size of the area to be leased;
>
> > ....
> >
> > (3) A covenant that all persons who attend the gun show will be required to sign a form approved by the city attorney setting forth a declaration of weapons in their possession, if any, and expressing their understanding of their responsibilities relating to possession, use and access to any firearms and ammunition at the gun show;
> >
> > (4) A covenant to comply with and enforce the public gun show regulations of the city, which shall include, without limitation, a

4

The Texas statute, TEX. LOC. GOV'T CODE ANN. § 215.001, held by the district court to preempt the ordinance, prohibits municipalities from regulating, *inter alia*, "the transfer, private ownership, keeping, transportation, ... or registration of firearms".[2]

requirement that no firearm may be brought into any exhibit area of any facility without first being inspected by a city police officer ... who shall verify that each firing pin has been removed from the firearm, or alternatively, the city police officer may install a trigger lock upon the firearm if it is of such a design that the firing pin(s) may not be removed by any procedure that will not cause permanent damage to the firearm, provided that the city police officer shall retain the key to the lock and the lock shall not be removed from the firearm until the firearm is checked out of the exhibit area....

HOUSTON, TEX. CODE OF ORDINANCES § 12-24.

[2]The statute provides, in pertinent part:

(a) A municipality may not adopt regulations relating to the transfer, private ownership, keeping, transportation, licensing, or registration of firearms, ammunition, or firearm supplies.

(b) Subsection (a) does not affect the authority a municipality has under another law to:

....

(2) regulate the discharge of firearms within the limits of the municipality;

....

(6) regulate the carrying of a

5

The City's brief devotes less than four pages (one of which is devoted to quoting § 215.001) to preemption. Essentially, the City contends that the ordinance is *not* preempted by § 215.001(a), because, rather than restricting the transfer, private ownership, keeping, transportation, licensing, or registration of firearms, the ordinance is instead a valid exercise of the City's authority, under § 215.001(b)(2), to regulate the discharge of firearms within the city limits.

The district court rejected this contention, reasoning that, although the ordinance's disabling requirement (removal of firing pins or installation of trigger locks) prevents the discharge of firearms, the ordinance also seeks to regulate the transfer, private ownership, or keeping of firearms, which is prohibited by

firearm by a person other than a person licensed to carry a concealed handgun under Subchapter H, Chapter 411, Government Code, at a:

    (A) public park;

    (B) public meeting of a municipality, county, or other governmental body;

    (C) political rally, parade, or official political meeting; or

    (D) nonfirearms-related school, college, or professional athletic event.

(c) The exception provided by Subsection (b)(6) does not apply if the firearm is in or is carried to or from an area designated for use in a lawful hunting, fishing, or other sporting event and the firearm is of the type commonly used in the activity.

TEX. LOC. GOV'T CODE ANN. § 215.001.

§ 215.001(a).  It concluded that, through the ordinance, the City "attempts to occupy all but a hair's width of the entire field of the regulation of gun shows"; and that, if the City's interpretation of § 215.001(b)(2) (discharge-exception) were accepted, it would "swallow[] the general rule preempting municipal regulation of firearms".  We agree.

The City does *not* address the ordinance's registration requirement; *nor* does it make any attempt to defend that requirement as a regulation relating to firearms-discharge.  In any event, pursuant to our review of whether the ordinance is preempted, it is obvious that the registration requirement is *not* related to preventing such discharge.  Therefore, the ordinance is *not* authorized by § 215.001(b)(2).  Moreover, the registration requirement is expressly preempted by § 215.001(a).

In district court, the City maintained that the disabling requirement was authorized by § 215.001(b)(6), which permits municipal regulation of the conduct of persons in certain public places; and that the ordinance is an exception to the City's more restrictive ban on possession of all firearms on city premises. But, the City does *not* make those contentions here and, therefore, has abandoned them.  *See* **Yohey v. Collins**, 985 F.2d 222, 224-25 (5th Cir. 1993).

Instead, the City relies on a Texas Attorney General opinion that a different ordinance, HOUSTON, TEX. CODE OF ORDINANCES § 28-47, which makes it unlawful for a child to discharge a firearm within the City limits, is *not* preempted by § 215.001(a).  *Op. Tex. Att'y*

7

*Gen.* No. 94-56 (1994). Unlike the ordinance now at issue, the ordinance addressed by the Attorney General prohibited *only* firearms-discharge; it did *not* impose registration or disabling requirements such as those now at issue.

In sum, based on our review of the summary judgment record, the ordinance is preempted by TEX. LOC. GOV'T CODE ANN. § 215.001(a); it is *not* authorized by the discharge-exception in subpart(b)(2). Because we so hold, we need *not* reach the federal and state commercial speech constitutional issues. *See* **County Court of Ulster County, N.Y. v. Allen**, 442 U.S. 140, 154 (1979) (court has "strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration").

### B.

The City moved for summary judgment in April 1996; Appellees, that May. By a May scheduling order, the discovery deadline was early January 1997, with trial in late March. In late November 1996, the parties moved jointly to extend the discovery deadline until the end of February 1997; the motion was granted in early December.

In mid-January 1997, the City requested documents related to all gun shows conducted by Appellees. But, one week later, they were awarded partial summary judgment. Accordingly, in mid-February, the parties' joint motion to limit discovery to Appellees' damages was granted.

In early March, one week after the discovery deadline, the parties moved jointly to continue trial. On 13 March, it was continued until mid-May.

That same day (13 March), Appellees moved for a protective order, contesting the relevancy of the requested documents pertaining to non-Houston shows. On 31 March, the City moved to compel document production and to amend the scheduling order; it maintained that, in order to determine Appellees' profit margins, it was necessary to review documents related to all of their shows.

On 29 April, the court granted the protective order and denied the motion to compel. Noting that the case was no longer at an early stage of pre-trial discovery, and that the partial summary judgment had narrowed discovery to damages for Appellees' inability to conduct shows at the center, the court held that the document requests were overly broad, unreasonable, and unduly burdensome.

On Thursday, 15 May 1997, *only* four days before trial set for Monday, 19 May, the City moved to continue trial for 45 days, claiming that it had received incomplete information to allocate Appellees' overhead expenses and income in order to calculate their profit margin. The continuance was denied at a hearing conducted the following day. At trial, the City repeatedly, but unsuccessfully, re-urged the relevance of the non-Houston evidence.

In contending that it was prohibited from defending against Appellees' damages claims, the City presses its need for documents, including income tax returns, relating to Appellees' gross revenues and expenses for non-Houston shows. Therefore, it contests the

9

adverse rulings on its motions to compel, for continuance, and for judgment as a matter of law, as well as the non-Houston evidence being excluded, and the protective order being granted.

In sum, the damages issue is extremely limited. For example, the City does *not* contest the methodology employed by Appellees, *nor* assert, as it did in district court, that, as a matter of Texas law, lost profits could *not* be recovered under the circumstances existing in this case. Distilled, the issue relates *only* to denied-evidence wanted for challenging lost profits. Concomitantly, as hereinafter discussed, the scope of our review is narrow.

The discovery, evidentiary, and *no*-continuance rulings are reviewed for abuse of discretion. *E.g., Coughlin v. Lee*, 946 F.2d 1152, 1158 (5th Cir. 1991) (discovery); *Polanco v. City of Austin, Tex.*, 78 F.3d 968, 982 (5th Cir. 1996) (evidentiary rulings); *Dorsey v. Scott Wetzel Servs., Inc.*, 84 F.3d 170, 171 (5th Cir. 1996) (continuance). "A trial judge's control of discovery is granted great deference." *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 534 n.12 (5th Cir. 1996). We will reverse a discovery ruling *only* if it is "arbitrary or clearly unreasonable", *Mayo v. Tri-Bell Industries, Inc.*, 787 F.2d 1007, 1012 (5th Cir. 1986), *and* the complaining party demonstrates that it was prejudiced by the ruling. *See Hastings v. North East Indep. School Dist.*, 615 F.2d 628, 631 (5th Cir. 1980). Similarly, unless an erroneous evidentiary ruling substantially affects the rights of the complaining party, the error is harmless. FED. R. EVID. 103(a).

10

"When the question for the trial court is a scheduling decision, such as whether a continuance should be granted, the judgment range is exceedingly wide, for, in handling its calendar and determining when matters should be considered, the district court must consider not only the facts of the particular case but also all of the demands on counsel's time and the court's." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1193 (5th Cir. 1986). We will *not* "substitute our judgment concerning the necessity of a continuance for that of the district court", unless the complaining party demonstrates that it was prejudiced by the denial. *Id.* at 1194.

The denial of judgment as a matter of law is reviewed *de novo*; in so doing, we apply the same standard as did the district court; and "[s]uch judgment is appropriate if, after viewing the trial record in the light most favorable to the non-movant, there is no 'legally sufficient evidentiary basis' for a reasonable jury to have found for the prevailing party". *Hill v. International Paper Co.*, 121 F.3d 168, 170 (5th Cir. 1997).

Obviously, each of the challenged rulings turns, to a great extent, on the relevance of Appellees' non-Houston documents. Discovery and evidence being limited to Houston revenues and expenses was premised, *inter alia*, on the court's conclusion that the other data was *not* relevant to Appellees' damages resulting from inability to conduct shows at the center. (As discussed, in denying the motion to compel and granting the protective order, the court also noted that the case was "no longer at an early stage of

11

pretrial discovery", and held that the discovery requests were "overly broad, unreasonable, and unduly burdensome".)

Consistent with this limitation-basis, the court, in denying judgment as a matter of law, rejected the City's contention that Appellees could *not* recover lost profits without evidence of their total revenues and expenses.

The City maintains that the desired evidence was relevant to the profitability of Appellees' business, alternate methods of calculating lost profits, and mitigation of damages; and that the evidence does *not* support the verdict because the lack of evidence relating to total gross revenues and expenses precluded establishing entitlement to lost profits. We conclude that the evidentiary, discovery, and *no*-continuance rulings were *not* an abuse of discretion; and that the damages award is supported by sufficient evidence.

Before 1996, Bean, who lives approximately 30 minutes away from the center, did business as a sole proprietorship; his business was incorporated in 1996. In essence, the business was a three-person operation, headed by Bean. Other personnel, such as security, were hired as necessary for a show. During the period 1992-97, Bean conducted approximately 35 non-Houston shows annually. He testified that, because of the ordinance, he was precluded from presenting 13 shows at the center; and that presenting a show there was *not* precluded by his presenting a non-Houston show on the same day.

Appellees sought damages *only* for lost profits resulting from their inability, because of the ordinance, to conduct center-shows. As noted, they did *not* claim that it affected their ability to conduct shows in other markets, and did *not* seek to recover other possible damages, such as for injury to business reputation, loss of good will, or other potential harm related to non-Houston shows. In its brief, the City has failed totally to demonstrate how the evidence at issue is relevant to the awarded lost profits.

In any event, the record reflects that the challenged discovery, evidentiary, and no-continuance rulings did *not* preclude the City from defending against the damages claim. In short, the requisite prejudice is lacking. Appellees presented evidence pertaining to each of their Houston shows (both at the center and at a private facility) before and after the ordinance was enacted. The City cross-examined Bean about his calculation of profits and expenses for each of those shows, and about his method of allocating fixed expenses. Concerning mitigation, the City's cross-examination of Bean established, for example, that he did *not* seek to conduct shows at several other facilities in the Houston area while the ordinance was in effect. In addition, the court allowed the City, over Appellees' objection, to elicit from Bean the above-described number of non-Houston shows held annually, and ruled that it could question him about those in Biloxi, Mississippi.

The City's assertion that the evidence does *not* support the award is belied by the record, which includes *not* only Bean's

13

testimony, but extensive documentary evidence corroborating it.  In the light of the framing of this issue on appeal, the exclusion of the non-Houston data does *not* undermine the sufficiency of that evidence.  Restated, there is a legally sufficient evidentiary basis for the awarded lost profits.

C.

Because we affirm, the City's only challenge to the fees award (stipulated amount of $54,442) — that a reversal compels its abrogation — fails.

III.

For the foregoing reasons, the judgment is

***AFFIRMED.***

14