# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 19, 2010

No. 08-30874

Charles R. Fulbruge III
Clerk

VERSAI MANAGEMENT CORPORATION, doing business as Versailles
Arms Apartments,

Plaintiff-Appellant,

v.

CLARENDON AMERICA INSURANCE COMPANY; EMPLOYERS FIRE
INSURANCE COMPANY; ONEBEACON INSURANCE COMPANY,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before WIENER, GARZA, and ELROD, Circuit Judges.

PER CURIAM:

Appellant Versai Management Corporation (Versai) appeals the district
court's grant of summary judgment in favor of Appellees Clarendon America
Insurance Company (Clarendon) and Employers Fire Insurance Co. (EFIC) on
(1) Versai's contract claims for unpaid insurance proceeds for property damage,
business interruption, replacement costs, and code compliance upgrades; and (2)
Versai's claims that EFIC and Clarendon violated Louisiana law by failing to
promptly settle claims and by misrepresenting the terms of their policies. Versai
also asks this court to find that the district court abused its discretion by

No. 08-30874

denying Versai's motion to extend the deadline for filing expert reports. We affirm in part and reverse in part.

I.

Versai manages the Versailles Arms Apartments in New Orleans. Versailles Arms Apartments are federally subsidized through the Department of Housing and Urban Development. The apartments consist of fifty residential buildings, each consisting of four first-floor apartments and four second-floor apartments. Forty-nine of the buildings suffered extensive damage during Hurricane Katrina during August of 2005 and were rendered uninhabitable until the property was repaired. The fiftieth building was destroyed in a natural gas explosion during the storm. Following the disaster, Versai notified its insurers of the hurricane damage to the property and submitted claims with the assistance of its retained private adjusters and contractors.

In February of 2006, Versai retained SCC Ventures, L.L.C., to conduct repairs on the property. That month, SCC Ventures estimated that the repairs would cost $17,878,326. Lloyds of London, which provided $2.5 million in "all risk" property insurance, paid its policy limits in full in April of 2006. Versai's flood insurance provider, the Standard Fire Insurance Company, was originally party to this suit but settled its claims with Versai for approximately $6 million. The remaining defendants, Clarendon and EFIC, together provided "non-flood" insurance on the apartments in excess of the $2.5 million provided by Lloyds, and this coverage was limited to a maximum recovery of $13,411,288. The Clarendon and EFIC policies follow the same terms of the underlying Lloyds Policy, but provided excess coverage once the Lloyds insurance limits were met.

Versai promptly notified all of its insurers about the losses and damage sustained to the Versailles Arms Apartments after Hurricane Katrina. Agents and adjusters for the insurers inspected the property throughout 2005 and 2006. Clarendon and EFIC's joint adjuster, Bill Adams of McLarens Young

2

No. 08-30874

International, submitted a number of reports to EFIC and Clarendon throughout early 2006. On May 26, 2006, Adams submitted a report stating that the companies owed Versai an undisputed sum of $2,972,991.38 each, and an insurer-produced proof of loss for this amount was then submitted. Clarendon issued its check for $2,972,991.38 on July 27, 2006, and EFIC issued its check for the same amount on August 1, 2006. On August 23, 2006, Versai presented EFIC and Claredon with a sworn statement in proof of loss, which was not prepared by the insurance companies, for the amount of $6,082,882.69 each. The companies did not submit additional payment.

In September of 2007, the original $17,878,326 estimate of the cost to repair the premises increased by approximately ten million dollars to include the costs of compliance with updated building codes, which would require additional repairs. No payments for code compliance were rendered. In December of 2007, Clarendon and EFIC each issued checks to Mark Carrier, Versai's public adjuster, for $255,498 for additional items of physical damage and business interruption. These checks were made payable to Versai, Versai's mortgage holder, and "Recov." (Recovery Management)—the adjusting business Carrier owned. Versai contends that Carrier forged the requisite endorsements and stole the money. By the end of 2008, the only completed repairs to the Versailles Arms Apartments consisted of demolishing portions of the property, gutting certain areas, re-framing parts of the structure, and repairing some of the roofing. Versai entered into a contract to sell the apartments to Peltier Gardens, L.L.C., but the deal ultimately fell through. Versai has since retained ownership of the apartments.

On August 25, 2006, Versai filed suit against Clarendon and EFIC, alleging that Clarendon and EFIC had not paid the full amount due under the excess non-flood policies for property damage, business interruption loss, replacement costs, and code compliance upgrades. Versai claimed that these

3

failures amounted to breaches of contract, breaches of the duties of good faith and fair dealing, and violations of Louisiana Revised Statutes sections 22:1892 and 22:1973.  The trial date was originally set for November 12, 2007, but was reset to September 2, 2008 upon the parties' joint motion for continuance. Versai filed a consent motion to continue on May 30, 2008, but the court denied it. Versai failed to produce expert reports in advance of the May 30 deadline, but approximately one month after the deadline passed, Versai moved the court to extend the deadline.  The court denied the extension. In July of 2008, EFIC and Clarendon moved for summary judgment on all claims.  Versai opposed the motion with affidavits from various fact witnesses, and later filed a motion to continue based on its discovery of Carrier's alleged theft. The district court granted summary judgment for EFIC and Clarendon on all claims, concluding that Versai had failed to present evidence showing a genuine issue of material fact.  Versai has since filed a timely appeal urging the court to reverse the grant of summary judgment on all claims.

## II.

We review the district court's grant of summary judgment *de novo.  See Paul v.  Landsafe Flood Determination, Inc.*,  550 F.3d 511, 513 (5th Cir. 2008). Summary judgment will be granted only if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Robinson v. Orient Marine Co.*, 505 F.3d 364, 366 (5th Cir.2007)  (quoting Fed. R. Civ. P. 56(c)).  In making this determination, we review all facts and inferences in the light most favorable to the non-movant.  *Id.*  "[O]nce the moving party meets its initial burden of pointing out the absence of a genuine issue for trial, the burden is on the nonmoving party to come forward with competent summary judgment evidence establishing the existence of a material factual dispute." *Clark v.  America's*

No. 08-30874

*Favorite Chicken*, 110 F.3d 295, 297 (5th Cir. 1997) (citation omitted).  After adequate time for discovery, Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The district court's interpretation of an insurance policy presents an issue of law reviewed *de novo.  See Finger Furniture Co. v. Commonwealth Ins. Co.*, 404 F.3d 312, 314 (5th Cir. 2005). We review a court's enforcement of a scheduling order under the abuse of discretion standard.  *See Sturgeon v. Airborne Freight Corp.*, 778 F.2d 1154, 1157-58 (5th Cir. 1985).

III.

Versai contends it produced evidence showing a genuine issue of material fact on its claims against the insurers for property loss, business interruption loss, housing code compliance costs, and replacement costs. We review these claims individually.

A.

Versai challenges the district court's grant of summary judgment for EFIC and Clarendon with respect to its property loss claims.  According to Versai, EFIC and Clarendon owe a total of approximately $12 million for property loss—the amount set out in Versai's August 23, 2006 proofs of loss sent to EFIC and Clarendon.   The district court found that Versai had presented "no evidence" to show that it was entitled to additional compensation beyond the approximately $6 million it had already received from EFIC and Clarendon because: (1) Versai failed to support its August 23 proofs of loss with documentation; (2) Versai failed to submit timely expert reports to support its claims; and (3) Versai's argument was estopped because a deposition from its company president, Melanie Meyer, contradicted its claim for relief.

5

No. 08-30874

Versai argues that the district court was not at liberty to grant summary judgment based on its "failure" to support its August 23 proofs of loss with additional documentation where the insurance policy created no such obligation. We agree. Versai's insurance policies with Clarendon and EFIC contained a requirement for submitting a proof of loss to obtain insurance payments. The section of the Excess Property Conditions policy, entitled "Proof of Loss," is as follows:

> The insured shall file with this Company, or its agent, within ninety (90) days from the date of discovery of the loss occurrence, a proof of loss signed and sworn to by the insured, stating to the best knowledge and belief of the insured:
> A) The interest of the insured and of all the others in the property affected;
> B) The value of each item thereof and the amount of loss or damage thereto;
> C) All encumbrances thereon;
> D) All other contracts of insurance, whether valid or not, covering any of the property affected, and shall furnish a copy of all the descriptions and schedules in all such insurance policies, if required.

The plain reading of this section reveals no requirement for additional documentation to support a proof of loss. Despite their failure at oral argument to cite any language from the policy imposing such a requirement, EFIC and Clarendon urge us to read this requirement into the policy because "all" similar insurance policies require documentation. If this is so, their policy breaks the mold. We will not read in such a requirement where none exists.

As the policy language does not preclude recovery, we must determine whether Versai submitted evidence demonstrating its entitlement to additional payment for property damage which could permit a reasonable jury to find in Versai's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We find that the affidavits from Meyer and Mark Mueller, the CEO of SCC Ventures, were sufficient to raise a genuine issue of material fact. Our circuit

6

No. 08-30874

has held that expert testimony is "essential" for proving the costs of reconstruction, *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007), but lay witnesses may properly testify to the work that has been performed on the property thus far and which projects have been funded by the proceeds Versai has already received. Likewise, Versai's claim is not foreclosed by Meyer's deposition testimony, in which she indicated Versai had no further claims against EFIC and Clarendon. Versai contends that the deposition testimony was based on information she received from Carrier, and it was taken before Meyer discovered that Carrier stole two checks from the insurers, which were to be paid to Versai. This situation suggests "the presence of arguable factual contradictions that must be resolved by a fact finder, an exercise proscribed at the summary judgment stage of the case." *Carroll v. Metro. Ins. & Annuity Co.*, 166 F.3d 802, 808 (5th Cir. 1999). Therefore, summary judgment was unwarranted.

## B.

Versai also disputes the district court's grant of summary judgment on its claim for additional payment for business interruption losses. Versai argues that it never received any portion of the alleged $1,400,000 suffered in business interruption losses following the destruction of the Versailles Arms Apartments in Hurricane Katrina.[1] The district court granted summary judgment for EFIC and Clarendon  on the basis that Versai had already been compensated for upper-floor business interruption losses by the two checks, in the amount of $255,498 each, which were given to Carrier. Because the propriety of the court's grant of summary judgment can be resolved on the basis of the additional losses to the lower-floor apartments, we need not address the question of whether

---

[1] The policy's business interruption extension covered any "loss resulting from necessary Interruption of Business caused by Direct Physical Loss or Damage . . . to property insured by" the policy.

7

No. 08-30874

Versai may recoup from EFIC and Clarendon the amount of the checks paid to Carrier.

Versai argues that its fact-witness affidavits, particularly that of company president Melanie Meyer, are sufficient to support its claims for business interruption losses. This court has held that Meyer, as the owner of a business, may properly testify to the value of that business. *LaCombe v. A-T-O, Inc.*, 679 F.2d 431, 433-34 (5th Cir. 1982); *see United States v. 329.73 Acres of Land*, 666 F.2d 281, 284 (5th Cir. 1982). The Federal Rules of Evidence, which typically apply in diversity jurisdiction cases, confirm that Meyer's position as company president permits her a broader range of testimony than a traditional lay witness would possess when testifying to matters concerning Versai's business. *See Tex. A&M Research Found. v. Magna Transp.*, 338 F.3d 394, 403 (5th Cir. 2003); *DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 685 (5th Cir. 2003); *accord* Fed. R. Evid. 701 advisory committee's note on the 2000 amendments. Meyer testified that "Versai has been unoccupied since the hurricane" and the "losses in income as a result of the wind damage to the property easily exceed $1.4 million dollars," an amount greater than the amount paid to Carrier. Meyer's affidavit also distinguishes between the business losses sustained on the second floor, at least a portion of which was paid to Carrier, and the alleged wind-caused losses on the first floor, which have not been paid. These statements are sufficient to raise an "issue of material fact" suggesting that Versai was entitled to compensation for business-interruption losses on the first-floor apartments, even if Meyer's affidavit is insufficient to support the full $1.4 million Versai seeks. *See Celotex Corp*, 477 U.S. at 322 (1986); *see also* Fed. R. Civ. P. 56(e).

## C.

Versai contests the district court's grant of summary judgment on its claim for payment for the costs of bringing the Versailles Arms Apartments into

compliance with current building codes. The district court granted summary judgment for EFIC and Clarendon because Versai had not produced any evidence showing it had incurred such costs—a prerequisite to payment under the terms of the insurance contract.

Versai's insurance policy includes a "Municipal Ordinance Extension" covering regulatory compliance costs incurred because of property damage from an event such as Hurricane Katrina. When certain preconditions are met, the policy *then* "insures costs actually and necessarily *incurred* in (a) the demolition and clearing of the site of the undamaged portion of the insured building, and (b) reconstructing the building to conform with the law or ordinance." (emphasis added). Versai concedes that "the repairs [to the Versailles Arms apartments] have not been completed," and it fails to identify any costs which have already been incurred. Although Versai may be able to show anticipated costs of complying with current building codes, Versai's insurance policy is explicit: Versai is not entitled to costs of compliance until after it has incurred the expenses of code compliance. Where the language of an insurance policy is clear and unambiguous, courts must enforce it as it is written. *Reynolds v. Select Props. Ltd.*, 634 So. 2d 1180, 1183 (La. 1994). Thus, the district court did not err in granting summary judgment for EFIC and Clarendon on this claim.

D.

Versai's claim for replacement costs likewise was properly dismissed because Versai has not completed repairs on its property as required by the insurance policy. The Lloyds insurance policy insured the Versailles Arms Apartments property against "Risks of Direct Physical Loss or Damage," and the policy's basis of valuation hinges on Versai's replacement efforts. The "Replacement Cost Endorsement" provision of the insurance policy states, in Subparagraph "d," that "[u]ntil replacement has been effected the amount of liability under this Policy in respect of loss shall be limited to actual cash value

No. 08-30874

at the time of loss."    Subparagraph "c" requires Versai to execute this replacement with "due diligence and dispatch."   The district court interpreted these provisions to mean that "[t]he insured cannot recover replacement costs until such time as repairs are actually made."

Versai asks the court to find that the insurers' duties to pay replacement costs is triggered when Versai demonstrates "readiness" to enact replacements on the property. The language of the contract does not support this interpretation.  Versai also argues that the district court improperly concluded that Versai had sold its property to another entity, and was not going to repair the property.  Versai is correct that the proposed sale of the property to Peltier Gardens fell through.  Nevertheless, Versai is not entitled to payment because it has not made the requisite replacements to be entitled to reimbursement.

IV.

The district court also granted summary judgment to EFIC and Clarendon on Versai's claims for relief under Louisiana Revised Statutes sections 22:1892 and 22:1973.[2]   These statutes vest the insurer with "an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured." La. Rev. Stat. Ann. § 22:1973(A); *accord* La. Rev. Stat. Ann. § 22:1892.  Sections 1892(B)(1) and 1973(B)(5) penalize insurers for failing to pay claims within thirty and sixty days, respectively, after receiving satisfactory proof of loss, but only if such failure is "arbitrary, capricious, or without probable cause."  An insurer also bears an affirmative duty to disclose coverages to insured parties, and section 1973(B)(1) defines an insurer's

---

[2]  Louisiana Revised Statutes section 22:1892 was referred to in briefing as section 22:658.  Section 22:658 was redesignated as section 22:1892 by Acts 2008, No.  415 section 1, effective Jan.  1, 2009.   Section 22:1973, referred to in briefing as section 22:1220, was redesignated as section 22:1973 by this same Act.

We also note that section 22:1892 was amended on July 10, 2009 to allow for emergency exceptions for the payment periods allowed to insurers, but the amendment does not affect the outcome of the case.

"[m]isrepresent[ation of] pertinent facts or insurance policy provisions relating to any coverages at issue" as a breach of the insurer's duty of good faith and fair dealing.  La. Rev. Stat. Ann. § 22:1973(B)(1).

Versai argues that it has raised a genuine issue of material fact regarding whether EFIC and Clarendon (1) acted in bad faith in failing to pay claims by the deadlines set out in sections 1892(B)(1) and1973(B)(5) after receiving satisfactory proofs of loss; and (2) violated section 1973(B)(5) when their independent adjuster, Bill Adams, made misrepresentations to Versai concerning the availability of code upgrade coverage.  We address these claims in turn.

## A.  Failure to Pay Within the Statutorily Prescribed Time Period

To prove that EFIC and Clarendon breached their insurers' duties to timely pay Versai's claims, Versai must show that "(1) the insurer has received satisfactory proof of loss, (2) the insurer fails to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious, or without probable cause." *La. Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1112-13 (La. 2008) (citing La. Rev. Stat. Ann. § 22:658, now § 22:1892 ); *see also Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 297 (5th Cir. 2009).  With regard to the first factor, Louisiana has adopted "liberal rules concerning the lack of formality relative to proof of loss." *Sevier v. U.S. Fid. & Guar. Co.*, 497 So. 2d 1380, 1384 (La. 1986).  So long "as the insurer obtains sufficient information to act on the claim, 'the manner in which it obtains the information is immaterial.'" *Id.*  (quoting *Austin v. Parker*, 672 F.2d 508, 520 (5th Cir. 1982)).  Thus, a "satisfactory proof of loss occurs when the insurer has adequate knowledge of the loss." *In re Hannover Corp. of America*, 67 F.3d 70, 73 (5th Cir. 1995) (citations omitted).

Versai's ability to prove the first and second elements of its statutory claims depends on the date upon which the insurers received sufficient

information to act on Versai's insurance claims. The record shows that EFIC and Clarendon received the insurer-produced "Sworn Proof of Loss" form for the amount of $2,972,991.38 each on July 21, 2006 and July 25, 2006, respectively. Clarendon paid Versai $2,972,991.38 on July 27, 2006, and EFIC paid that amount to Versai on August 1, 2006. However, Versai points out that on May 26, 2006, the joint adjuster for the insurers issued a report stating that the EFIC and Clarendon each owed, at a minimum, an "undisputed amount of $2,972,991.38." Versai argues that this report, rather than the "Sworn Proof of Loss" form, was the "satisfactory proof of loss" for purposes of determining whether statutory deadlines were met because it gave the insurers adequate notice of the undisputed claim. The May 26 report, with its clear statement setting out the undisputed amount of loss, is more formal in nature than other sources which have sufficed as satisfactory proofs of loss under Louisiana's liberalized interpretation. *See Youngblood v. Allstate Fire Ins. Co.,* 349 So.2d 462, 465 (La. App. 3d Cir. 1977) (finding that a satisfactory proof of loss was not required to be in writing). The report may be sufficient to show that EFIC and Clarendon possessed adequate knowledge of the undisputed claim, and if so, the statutory time periods began to run on May 26. Therefore, we conclude that Versai produced sufficient evidence on the first two prongs. *See In re Hannover Corp. of America*, 67 F.3d at 73.

EFIC and Clarendon argue that Versai produced no evidence on the third prong to show that the insurers acted in an "arbitrary and capricious" manner. The Louisiana Supreme Court has recognized that "[a]ny insurer *who fails to pay [an] undisputed amount* has acted in a manner that is, by definition, arbitrary, capricious or without probable cause . . . . " *La. Bag. Co.*, 999 So. 2d at 1116 (citation omitted) (emphasis added). Thus, the failure to pay an undisputed amount is a per se violation of the statute. *See id.* EFIC and Clarendon attempt to distinguish the facts of this case by showing that their

eventual payment and the length of delay compare favorably with the actions of the insurer in *Louisiana Bag,* but merely behaving in a less-arbitrary and capricious manner does not absolve insurers of the consequences of delay. *See id.* Thus, EFIC and Clarendon are not entitled to summary judgment.

## B. *Misrepresentation*

Versai is also entitled to a reversal of the district court's grant of summary judgment on its claim of misrepresentation under Louisiana Revised Statutes section 22:1973B(1). Versai argues that it provided evidence that EFIC and Clarendon's adjuster, Adams, misrepresented the availability of insurance upgrades for compliance with updated building codes. A "misrepresentation" occurs when an "an insurer either makes untrue statements to an insured concerning pertinent facts [of a policy] or fails to divulge pertinent facts to the insured." *McGee v. Omni Ins. Co.*, 840 So. 2d 1248, 1256 (La. App. 3d Cir. 2003). The terms of the statute require that the misrepresentations relate to a "coverage issue" which would "involve facts about the policy itself, such as the amount of coverage, lapse or expiration of the policy, or exclusions from coverage." *Imperial Trading Co. v. Travelers Prop. Cas. Co.*, No. 06-4262, 2009 WL 2356290, at *3 (E.D. La. July 27, 2009) (citations and internal quotation marks omitted).

Code upgrade coverage is a "coverage issue" under the statute, so a misrepresentation of code upgrade coverage would be a statutory violation. Versai presented evidence that Adams, EFIC and Clarendon's joint adjuster, testified in deposition that he did not know that upgrade coverage was available to the insured under the Clarendon policy (the excess policy) when he first met with Versai and Carrier. Adams further admitted that he was informed later that code upgrades applied under the policy. However, in Adams's report from November 2005, Adams noted that Versai had coverage for code upgrades under "the first excess layer of primary coverage." Clarendon and EFIC argue that

Versai's reliance on these misrepresentation was "unreasonable as a matter of law" because Adams's representation differed from the terms of the policy, and "the insured had a duty to read the policy." Section 22:1973(B)(1) does not require a plaintiff to demonstrate "reasonable reliance" on the misrepresentation. Further, the insurers' interpretation would obliterate section 22:1973(B)(1), which equates a misrepresentation of the policy's terms with a breach of the insurer's duty of good faith and fair dealing. Thus, we find that Versai has alleged facts sufficient to preclude summary judgment on its misrepresentation claim.

V.

Finally, Versai argues that the district court abused its discretion when it had denied Versai's motion to extend the deadline to produce expert witness reports. A district court's scheduling decision is reviewed for abuse of discretion, and that discretion is "exceedingly wide." *HC Gun & Knife Shows, Inc. v. City of Houston*, 201 F.3d 544, 549 (5th Cir. 2000). When a district court sets its calendar, the court "must consider not only the facts of the particular case, but also all of the demands on counsel's time and the court's [time]." *Id.* at 549-50 (citation and internal quotation marks omitted). The district court's decision "to exclude evidence as a means of enforcing a pretrial order 'must not be disturbed' absent a clear abuse of discretion." *Geiserman v. MacDonald,* 893 F.2d 787, 790 (5th Cir. 1990) (citation omitted). We review the court's exercise of discretion to refuse to extend the expert report deadline by considering the following four factors: "(1) the explanation for the failure [to submit the expert report]; (2) the importance of [the report]; (3) potential prejudice in allowing [the report]; and (4) the availability of a continuance to cure such prejudice." *Id.* at 791 (citation omitted).

Versai's excuses for failing to submit timely expert reports are weak. The deadline to produce such reports was May 30, 2008. Versai blamed its tardiness

14

No. 08-30874

on the Department of Housing and Urban Development's delay in approving its requests for experts, but Versai did not demonstrate that it contacted the Department in a timely matter. Versai also states that it had relied on the anticipated granting of its consent motion to continue. This reliance was not reasonable, as another continuance had already moved the trial date from November 12, 2007 to September 2, 2008. The second factor favors Versai. The expert reports were of great significance to Versai's claims for additional proceeds for property damage. The reports also would have aided Versai's claim for payment for business interruption. EFIC and Clarendon have not explained why the extension would have caused them prejudice. Versai did in fact file a motion to continue, which the court denied, but this factor does not strongly favor Versai in light of the court's justifiable reluctance to grant another such request after granting a lengthy continuance on the parties' first request.

Versai argues, without support, that when the court extends a deadline for one party, the court abuses its discretion if it does not extend the same courtesy to the opposing party. Even if Versai could prove that the district court extended a deadline on behalf of EFIC and Clarendon, we would nevertheless refuse to adopt Versai's proposed rule that would limit the court's broad discretion over matters concerning its own docket. *See Streber v. Hunter*, 221 F.3d 701, 736 (5th Cir. 2000). Therefore, we conclude that the district court did not err in failing to grant a continuance and a motion to extend the deadline for filing expert reports.

## CONCLUSION

We AFFIRM the district court's grant of summary judgment for EFIC and Clarendon on Versai's claims for building code compliance and replacement costs, and we also AFFIRM the court's denial of Versai's motion to extend the expert report deadline. We REVERSE the grant of summary judgment on

15

No. 08-30874

Versai's claims for property damage and business interruption, along with its statutory claims for failure to render timely payment and misrepresentation of coverage. We remand to the district court for further proceedings in accordance with this opinion.