# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 12, 2022

Lyle W. Cayce
Clerk

No. 18-31158

Tarsia Williams; Breck Williams,

*Plaintiffs—Appellants*,

*versus*

Boeing Company,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:09-CV-65

Before Southwick, Graves, and Engelhardt, *Circuit Judges*.
Leslie H. Southwick, *Circuit Judge*:

This case involves mesothelioma, nationwide multidistrict litigation consolidated in Pennsylvania, and a plaintiff-decedent whose claim was rejected on summary judgment in the centralized litigation. The appeal follows a remand from the Pennsylvania district court to the Louisiana district court where this particular federal suit began over a decade ago.

Our task is to determine whether discovery was improperly judicially truncated and whether fact questions remain that should have prevented summary judgment. We conclude that the MDL court engaged in improper

weighing of the evidence on summary judgment relative to the survival action. We therefore REVERSE IN PART and REMAND to the Louisiana district court. Further, we consider it appropriate case management for the Louisiana district court also to reconsider the Plaintiffs' motion for additional discovery. We AFFIRM the district court's dismissal of the wrongful death claim.

## FACTUAL AND PROCEDURAL BACKGROUND

This MDL consolidated claims about asbestos exposure at a wide variety and large number of locations around the country. The district judge who has presided over this litigation since 2008 wrote a law journal article that provides useful background on how these myriad asbestos claims ended up in the MDL and what procedures the court followed.[1] Of some relevance, the article indicates that after common discovery in the MDL, cases are either resolved on summary judgment by that court and then remanded to the originating court for entry of final judgment, or — if they cannot be settled — are remanded to the originating district court for trial or other proceedings.[2] This case was resolved by the MDL court on summary judgment, and we are giving appellate review to that judgment, which was entered as final by the Louisiana district court on remand from the MDL court.

The plaintiff-decedent, Frank Williams, worked at the Michoud Assembly Facility ("MAF") near New Orleans from 1974 to 2008 as an employee of Lockheed Martin Corporation and its predecessor corporation, Martin Marietta (together, "Lockheed"). The MAF is a design and

---

[1] Eduardo C. Robreno, *The Federal Asbestos Product Liability Multidistrict Litigation (MDL–875): Black Hole or New Paradigm?*, 23 WIDENER L.J. 97, 126 (2013).

[2] *Id.* at 141–43

No. 18-31158

manufacturing site for NASA. Such projects as the production of the first stage of the Saturn V rocket for the Apollo program and the external fuel tank for the Space Shuttle program were conducted at the MAF. While at the MAF, Williams worked as a mechanical engineer, primarily at a desk, "drafting and computing."

The record contains evidence that asbestos had been used in different locations in the facility, and that asbestos caused some workers to contract mesothelioma. The MDL court found that Williams failed to prove causation, specifically, that he did not prove when and where he was present in one of the buildings that would have exposed him to respirable asbestos.

There was some relevant evidence tending to show that Williams was exposed to asbestos. A co-worker testified that Williams worked "primarily on the second floor of Building 350, although he also frequently visited building 351 and the cafeteria, and sometimes visited Buildings 101, 102, and 103, and possibly others." The same co-worker testified that "during the mid-to-late 1980s, there was asbestos abatement work on the second floor of Building 350." A medical expert, Dr. K. Barton Farris, wrote a declaration and expert report stating that it was his opinion that Williams's exposures to asbestos at the MAF were "substantial contributing factors in the causation of [Williams's] mesothelioma." An affidavit and expert report from industrial hygienist Frank Parker stated that "the asbestos in the facility would have been deteriorating by the time [Williams] worked there, and that his employment would have exposed him frequently to above-average ambient background levels of asbestos." Additional evidence produced by the Plaintiffs included project proposals, contracts, reports, a solicitation for bids, and various other documents that the Plaintiffs "contend indicate that asbestos was used at the facility during the time of Boeing's custody."

No. 18-31158

In August 2008, Williams was diagnosed with mesothelioma. In November 2008, he filed suit in Civil District Court for the Parish of Orleans asserting claims arising from his alleged exposure to asbestos at the MAF against Lockheed and other defendants. Lockheed removed to the United States District Court, Eastern District of Louisiana under the Federal Officer Removal Statute. Early in the litigation, Frank Williams died. His children Tarsia and Breck Williams initially proceeded with the case without filing a formal substitution. On February 6, 2009, the Plaintiffs filed their first motion in the Eastern District of Louisiana to remand to state court. At that point, the Plaintiffs stated that they wished to amend their complaint, but they did not do so. The Judicial Panel on Multidistrict Litigation then transferred the action to the Asbestos MDL court in the Eastern District of Pennsylvania. In 2011, the Plaintiffs finally filed a motion to substitute themselves for Williams, which the MDL court granted in May 2012. In early 2013, after several years of proceedings in the MDL court, the Plaintiffs filed an amended pleading for damages that named Boeing as a defendant for the first time.[3]

On February 13, 2013, the MDL court set a date of June 30, 2013 for the close of discovery. The Plaintiffs finally obtained service on Boeing on April 12, two months after the February 13 scheduling order and two months before the June 30 scheduled close of discovery. The Plaintiffs served their first set of interrogatories and document requests on Boeing on May 24. Then, on June 14, they noticed Boeing's deposition for a date of June 24 — one week prior to the scheduled close of discovery. At the time Boeing's deposition was noticed, Boeing's motion to dismiss — filed on February 14

---

[3] Boeing was first named as a defendant in the "First Amended Petition for Damages" filed on January 24, 2013. It was then named in the Second Amended Petition of February 6, 2013.

— was pending, so Boeing sought a protective order and stay of discovery. The MDL court granted Boeing's motion to dismiss on June 24. Despite the Plaintiffs' pending motion for reconsideration, the court subsequently granted the protective order on July 22, 2013, as Boeing was dismissed at that time. Upon reconsideration, the MDL court reinstated the suit against Boeing. When the Plaintiffs sought to reopen discovery and reconsider the deadlines pertaining to Boeing, though, the magistrate judge found the first set of discovery requests "overly broad and improper" and declined to reopen discovery.

Subsequently, the MDL court granted motions for summary judgment as to several defendants, including Boeing. In particular, the MDL court concluded that Boeing was entitled to summary judgment on the survival action since "no reasonable jury could conclude from the evidence that [Williams] was exposed to asbestos at the Michoud Assembly Facility such that it was a substantial factor in the development of [his] illness," and that Boeing was entitled to summary judgment on the Plaintiffs' wrongful death claims because they were time-barred. Thereafter, the case was returned to the Eastern District of Louisiana for entry of judgment.

Upon remand to the Eastern District of Louisiana, the Plaintiffs sought entry of final judgments for their claims against Boeing and other defendants in order to allow this appeal to be taken. Their efforts were initially unsuccessful. *See Williams v. Seidenbach*, 748 F. App'x 584, 585 (5th Cir. 2018). After considerable maneuvering by the Plaintiffs to remedy their jurisdictional defects, we placed this case in abeyance pending the resolution of similar jurisdictional appeals concerning other defendants. The Plaintiffs' jurisdictional issues were ultimately resolved favorably by *Williams v. Seidenbach, Inc.*, 958 F.3d 341 (5th Cir. 2020) (*en banc*). We removed this case from abeyance in March 2021 and now consider the merits of the Plaintiffs' appeal.

No. 18-31158

## DISCUSSION

I.      *Summary judgment on the survival action*

This court reviews a district court's summary judgment decision *de novo*, applying the same legal standards employed by the trial court. *Mills v. Davis Oil Co.*, 11 F.3d 1298, 1301 (5th Cir. 1994). To be clear, it is the Pennsylvania MDL court's summary judgment that we review, but Louisiana substantive law controls. Under Louisiana law, to prevail in an asbestos injury case, "the claimant must show . . . he had significant exposure to the product complained of to the extent that it was a substantial factor in bringing about his injury." *Rando v. Anco Insulations, Inc.*, 16 So. 3d 1065, 1091 (La. 2009). A claimant's evidence may be direct or circumstantial. *Id.* at 1089. Even if the plaintiff was only exposed to asbestos for a "short period for an employer and he had longer exposure working for others, it cannot be said the relatively short asbestos exposure was not a substantial factor in causing his mesothelioma." *Id.* at 1091.

The plaintiff has the burden of proof and "must establish his claim to a reasonable certainty[;] mere possibility, and even unsupported probability, are not sufficient to support a judgment in plaintiff's favor." *Vodanovich v. A.P. Green Indus., Inc.*, 2003–1079, p. 6 (La. App. 4 Cir. 3/3/04); 869 So. 2d 930, 934. To defeat an asbestos defendant's motion for summary judgment, which is the relevant motion here, the Plaintiffs need only show that a reasonable jury could conclude that it is more likely than not that Williams inhaled defendant's asbestos fibers, even if there were only "slight exposures." *See Held v. Avondale Indus., Inc.*, 95-1788, p. 5 (La. App. 4 Cir. 4/3/96); 672 So. 2d 1106, 1109.

The Plaintiffs' legal argument can be summarized as this: (1) the MDL court misapplied Louisiana law in granting summary judgment and (2) the MDL court weighed improperly weighed evidence.

No. 18-31158

First, the allegedly misapplied or ignored state law is a civil law concept premised on custody that is referred to as *garde*. The concept is now established in Civil Code article 2317, which states that parties "are responsible, not only for the damage occasioned by [their] own act, but for that which is caused by the act of persons for whom [they] are answerable, or of the things which [they] have in [their] custody." LA. CIV. CODE art. 2317. The Code continues:

> [t]he owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

*Id.* art. 2317.1

Although the MDL court did not explicitly mention *garde* in its opinion, it analyzed evidence relevant to *garde* when granting summary judgment to Boeing. This is clear from three main facts taken as true by the MDL court: it accepted Boeing as the "custodian of the facility;" acknowledged Boeing's responsibility for various services (including maintenance); and accepted as true certain evidence that Boeing was responsible for the design, approval, and installation of substantial amounts of asbestos at the facility as early as 1963. We are satisfied that the MDL court considered the proper legal concept of *garde* and analyzed whether Boeing had the necessary relationship to the facility. We reject the Plaintiffs' argument that the MDL Court did not consider *garde*.

Thus, we consider whether we can uphold this ruling about *garde*, expressed by the district court in equivalent terms. The MDL court considered the following facts: Williams worked in Building 350, primarily on

7

the second floor, and frequently visited Building 103. As early as 1963, there was "substantial" asbestos at the facility, including in Buildings 103 and 350. There was asbestos abatement work in Building 350 in the mid-to-late 1980s. Williams saw men in "moon suits" at the facility, and it was reasonably inferable that their use was as a result of asbestos remediation.

In the summary judgment context, "inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and citation omitted). We consider three findings by the MDL court particularly troubling.

First, the MDL court accepted that Williams worked, for some amount of time, in a building that had asbestos, and expert testimony indicates the asbestos was deteriorating and becoming airborne during his tenure. An inference taken in favor of the non-moving party would be that Williams, who for some amount of time had to breathe in the spaces where asbestos was deteriorating, was exposed to this airborne asbestos. The MDL court, though, found that there was "no evidence that [Williams] was ever exposed to respirable asbestos dust at any location in the facility."

Second, in a summary judgment order rendered that same day regarding another defendant, the MDL court relied on evidence that Williams saw individuals in moon suits to assume he was present during the asbestos remediation. Just the opposite seems to have been inferred here, as the MDL court in Boeing's summary judgment order stated that there was "no evidence that [Williams] was working nearby (or in that building at all) when that [remediation] work was performed," despite the fact that Williams also had witnessed the likely remediation efforts.

Third, the Williams' expert, Frank Parker, testified that Williams would have been exposed "frequently to above-average ambient background

levels of asbestos (as a result of maintenance and repair work occurring in the facility in buildings in which he worked/visited)." The MDL court, though, inferred that the presence of ambient asbestos could not have contributed to Williams's illness. Based on this record, whether Williams was exposed to respirable asbestos is a disputed issue of fact.

These inferences made in favor of Boeing, the moving party, are particularly significant in light of the MDL court's conclusion that the evidence was "insufficient to support a finding of causation." The MDL court found that, "[a]lthough the evidence makes clear that there was asbestos throughout the facility during and prior to Decedent's work there, there is no evidence that Decedent was ever exposed to respirable asbestos dust at any location in the facility." In support of this finding, the MDL court also found that the evidence that Williams primarily worked in Building 350 was not "sufficiently specific" to allow a jury to conclude he was exposed to asbestos during an abatement project because "[t]he evidence that Decedent primarily worked in Building 350 does not exclude the possibility that he was not working there during the asbestos abatement project." Finding to the contrary, the MDL court found, "would be impermissibly speculative."

We conclude that "speculation" would not be involved, only a potentially reasonable inference. Although the MDL court concluded that the record did not support a finding that Williams was exposed, we cannot say that, taking all inferences in favor of Williams, the non-moving party, that no reasonable juror could have found for him on the evidence before the court. We reverse summary judgment on this claim.

II.    *Discovery decisions*

The district court limited discovery as to Boeing. We are loath to inject ourselves into such case management decisions absent compelling

reasons. We have examined the record closely on this and are left with uncertainties about the limitations. We explain.

Discovery decisions are reviewed for abuse of discretion. *See, e.g.*, *HC Gun & Knife Shows, Inc. v. City of Houston*, 201 F.3d 544, 549 (5th Cir. 2000). This court "will reverse a discovery ruling *only* if it is 'arbitrary or clearly unreasonable,' *and* the complaining party demonstrates that it was prejudiced by the ruling." *Id.* (quoting *Mayo v. Tri-Bell Indus., Inc.*, 787 F.2d 1007, 1012 (5th Cir. 1996)) (emphasis in original) (citations omitted).

The Plaintiffs appeal the MDL court's denial of their request for a six month's reopening of discovery. At the time the magistrate judge for the MDL court denied the Plaintiffs' request to reopen discovery, the suit had been docketed in the MDL court for years. The Plaintiffs had only named Boeing as a defendant in the preceding six months and had delayed serving their discovery requests and notice of deposition on Boeing until a little over a month from the close of discovery. Boeing argues that the Plaintiffs were "clearly given the chance to engage in meaningful discovery" and wasted that opportunity "over the course of five years of litigation." Boeing also states that Plaintiffs' efforts to reopen discovery are inappropriate because they have not been able to identify any "arbitrary or clearly unreasonable" action by the magistrate judge, that their notice of deposition was deficient, and the motion to compel discovery was filed "six months after the close of discovery."

The Plaintiffs explain their delay in joining Boeing as a defendant by arguing that Boeing's alleged role at the MAF had only become apparent in documents received shortly before they added Boeing to the suit. Further, even though the Plaintiffs gave no explanation for their initial delay in serving discovery requests on Boeing after naming it as a party, they are correct that Boeing avoided turning over documents by filing various motions that

delayed discovery until dispositive motions had been decided after the scheduled close of discovery.  We next summarize the motions.

After the Plaintiffs served their discovery request and interrogatories, Boeing first filed a motion to dismiss, and then sought a protective order as well as a stay of discovery while the motion was pending.  The MDL court then granted Boeing's motion to dismiss on June 24.  Discovery closed on June 30, 2013.  The protective order/stay was then formally granted on July 22, 2013 because, although Boeing was dismissed at that time, the Plaintiffs had filed a motion for reconsideration of the dismissal on the pleadings.  Upon reconsideration, the MDL court reinstated the suit against Boeing.  When the Plaintiffs sought to reopen discovery and reconsider the deadlines pertaining to Boeing, though, their request was denied.  In ruling on the discovery motion, the magistrate judge for the MDL court found the first set of discovery requests "overly broad and improper," and based its denial on "the circumstances of the case."

Perhaps the magistrate judge was correct that the discovery that the Plaintiffs sought was overly broad, but at least some of what the Plaintiffs sought may have been outcome determinative.  Prior to summary judgment, the Plaintiffs sought considerable written discovery from Boeing and attempted to depose a corporate representative.  Included in their written discovery requests was information regarding Boeing's contracts with NASA, Boeing's role at the MAF, Boeing's asbestos policies, documents related to asbestos at the buildings that Williams was alleged to frequent, and the identity of persons and organizations involved in asbestos-related activity at the MAF.  At the time, Boeing characterized the requests as "overly broad and improper" and "unrestrained as to scope, time, and location such that they constitute[d] an egregious violation [of the district court's discovery order.]"

No. 18-31158

Boeing is correct that the discovery requests are expansive. Some of the information, though, might have advanced the Plaintiffs' case across two dimensions and may not have been available from other sources. First, evidence showing Boeing's control of the relevant workspaces could have shown whether Boeing was responsible for installing or maintaining asbestos in the buildings that Williams was known to have frequented. Second, and relatedly, it could have decreased the uncertainty about Williams's connection to Boeing by way of showing the extent of Boeing's involvement at the MAF.

Without knowing more about what was already available to the Plaintiffs by way of other parties or through discovery sharing tools set up by the MDL court, we do not know if denying the motion to reopen discovery was either "arbitrary or clearly unreasonable" or even if it prejudiced the Plaintiffs. To reverse this discovery decision, both must be true. If the Plaintiffs were denied the opportunity to seek discovery from Boeing and had no other means for acquiring information concerning Boeing's relationship with the relevant buildings, they would meet this stringent test. In light of our conclusion that summary judgment was improperly granted, the district court will have the benefit of the holding we have already made about the evidence when re-evaluating the need for discovery.

We REMAND to the district court to ascertain what responsive information the Plaintiffs could have reasonably accessed as part of the MDL and whether additional discovery is appropriate.

III.    *Wrongful death claims*

Finally, the Plaintiffs claim that the district court erred as a matter of law in dismissing their wrongful death claims as untimely filed and thus prescribed.

12

The relevant procedural facts are as follows. Frank Williams brought suit against Lockheed on November 12, 2008, then died on January 1, 2009. On February 6, 2009, the Plaintiffs filed a motion to remand to state court, announcing their intent to amend their claims, and asserting that the court did not have valid subject matter jurisdiction. The motion announced the Plaintiffs' intent to be substituted as proper party plaintiffs, but it did not formally request leave to substitute. The case was then transferred to the MDL court prior to a ruling by the Louisiana district court on the remand motion. In June 2010, counsel notified the MDL court that Frank Williams had died. In February 2011, the Plaintiffs filed a motion to substitute, which was granted in May 2012. The Plaintiffs finally described their wrongful death claim in their First Amended Petition for Damages filed in January of 2013. At this point, Frank Williams had been deceased for nearly four years.

In determining whether the Plaintiffs had preserved their wrongful death claims, the MDL court applied the substantive law of Louisiana regarding prescription. The MDL court dismissed the claims as time-barred. It did so because the prescriptive period for wrongful death claims in Louisiana is one year, but the Plaintiffs amended their complaint to include a wrongful death claim more than three years after Mr. Williams's death without identifying any justification for such a delay.

On appeal, the Plaintiffs argue that they were "asserting Mr. Williams' claims 'as well as their own'" when they stated in their January 2013 First Amended Petition for damages that they would "be substituted as proper party plaintiffs in a forthcoming amended petition for damages." They argue this was sufficient to preserve their wrongful death claims under Louisiana law. They also claim that the wrongful death action relates back to the original complaint. Boeing responds that the Plaintiffs' argument under the relation back doctrine is improper because under Louisiana law "survival and wrongful death actions are totally separate and distinct causes of action,"

citing *Walls v. American Optical Corp.*, 98-0455, p. 14 (La. 1999); 740 So. 2d 1262, 1273.

Boeing further argues that the notice from the Williams children that they were pursing their father's claims as well as their own establishes only that that they were the proper plaintiffs to pursue survival action claims. They failed, though, to include any actual wrongful death claims. Thus, Boeing argues that what was said in the motion to substitute "cannot, and does not, serve as notice of an intention to file wrongful death claims, and therefore did not interrupt prescription with respect to these claims."

Both parties consider a 1996 district court opinion to be helpful to their arguments. *See Lagan v. Owens-Corning Fiberglas Corp.*, No. 80–4338, 1996 WL 445350 (E.D. La., Aug. 5, 1996). In that suit, a man was exposed to asbestos in his employment and sued his employer for damages. *Id.* at *1. That plaintiff's wife also sought damages "for loss of her husband's society, services, and support as a result of his illness." *Id.* The man died. Three years later, his widow amended her complaint to substitute herself as the plaintiff and explicitly to assert a claim for wrongful death. *Id.* The district court distinguished Louisiana Supreme Court precedent favoring prescription by stating that "because those cases involved additional plaintiffs' filing amended complaints," and because "Mrs. Lagan was an original plaintiff in the suit[,] . . . the [c]ourt need only determine if the amendment relates back to Mrs. Lagan's pending claim." *Id.* Because Mrs. Lagan's wrongful death claim arose out of the "same conduct, transaction or occurrence" as originally alleged — and because the original petition notified the defendant that Mrs. Lagan was seeking recovery for "the loss of her husband's society, support, and services" — the court found that "[a]dding the wrongful death claim [did] not affect the issue of liability, nor [did] it significantly affect the type of evidence needed to establish damages." *Id.*

at *2. The court thus found that the amended complaint related back to the filing date of the original pleading and was not prescribed. *Id.*

The *Lagan* court's analysis of similar issues is certainly worth considering, though of course the decision is not precedential. Whatever the merits of that decision, the Plaintiffs in this case were not original parties in the suit as was Mrs. Lagan, nor did Williams initially bring suit to recover for loss of society, support, and services. Even though the wrongful death claim arises from the same conduct, transaction, or occurrence of the survival claim, the evidence required to establish damages for Breck and Tarsia Williams would almost certainly be different from the evidence required to establish damages for Frank Williams.

The only additional decision cited by the Plaintiffs did allow a relation back of the claims. *See Giroir v. South La. Med. Ctr., Div. of Hospitals*, 475 So. 2d 1040 (La. 1985) (Dennis, J., now a member of this court). In a suit that was timely only by a few days, the plaintiff's husband brought a wrongful death suit after she died. *Id.* at 1041–42. Then the children of these parents filed suit, ten days after their father had filed but after prescription had run. *Id.* at 1041. The Louisiana Supreme Court allowed the suit because one plaintiff (the husband) had already brought a timely wrongful death claim; it found that certainly "the defendant either knew or should have known of the existence and involvement of the new plaintiff, the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated, and the defendant will not be prejudiced in preparing and conducting his defense." *Id.* at 1041. Here, of course, no wrongful death claim by anyone was brought until after the prescription period.

Much more applicable is a case in which a plaintiff filed suit against his employer for being exposed to free silica while still living and a subsequent suit by his widow and children for a wrongful death was deemed prescribed

as not relating back due to the separate nature of wrongful death and survival actions. *See Ducre v. Mine Safety Appliances Co.*, 634 F. Supp. 696, 698 (E.D. La. 1986) (citing *Guidry v. Theriot*, 377 So. 2d 319, 322 (La. 1979)). We agree with that court's reasoning.

The district court properly determined that the Plaintiffs' wrongful death claims are time-barred.

We REVERSE IN PART and REMAND to the district court for further proceedings on the survival action. We REMAND for the district court to RECONSIDER plaintiffs' motion for further discovery. We AFFIRM the district court's dismissal of the wrongful death claims.