# United States Court of Appeals for the Fifth Circuit

———————————

No. 22-30316

———————————

United States Court of Appeals
Fifth Circuit

**FILED**

April 24, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

George M. Fluitt, III, *also known as* Trey Fluitt,

*Defendant—Appellee*,

*versus*

Hurricane Shoals Entities; Khalid Satary,

*Respondents—Appellants*.

———————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:20-CR-196-1

———————————————————————

Before Dennis, Engelhardt, and Oldham, *Circuit Judges*.
James L. Dennis, *Circuit Judge*:

This interlocutory discovery appeal presents several unusual procedural and jurisdictional questions. Because we have appellate

No. 22-30316

jurisdiction, the non-party appellants have standing, and the district court did not abuse its discretion, we AFFIRM.

## I. Factual & Procedural Background

In September 2020, George Fluitt was indicted in the United States District Court for the Western District of Louisiana on three counts of fraud and offering kickbacks related to genetic testing services that his company, Specialty Drug Testing LLC, provided to Medicare beneficiaries. Earlier, in September 2019, as part of a nationwide investigation into genetic testing fraud, the Government executed search warrants at laboratories located in Georgia, Louisiana, and Oklahoma, referred to as the Hurricane Shoals Entities ("HSE"), allegedly operated by Khalid Satary (collectively "Appellants"). The Government copied several terabytes of data from HSE pursuant to these warrants, some of which the Government later determined were material to Fluitt's defense. Satary was indicted separately in the United States District Court for the Eastern District of Louisiana. *See* Indictment, *United States v. Satary*, No. 2:19-CR-197 (E.D. La. Sept. 26, 2019), ECF No. 1.

In Fluitt's case, the Government established a "Filter Team," separate from the Prosecution Team, to review materials seized in its investigation and identify any that might be privileged.[1] The Filter Team's review was governed in part by a Protocol Order, entered by the district court

---

[1] Appellants spill significant ink criticizing the Government's use of filter teams and protocol orders in federal criminal prosecutions. While some members of this panel have serious concerns about the propriety of having Government filter teams conduct privilege reviews of seized documents, that practice falls outside of the scope of the narrow discovery dispute presently before us. Were we to reach Appellants' arguments, we would be issuing an advisory opinion, which "is inappropriate, unnecessary, and beyond the purview of federal courts." *United States v. Varner*, 948 F.3d 250, 260 (5th Cir. 2020) (Dennis, J., dissenting) (citations omitted).

at the Government's motion, which established a multi-step process for notifying a third party that it might have a claim of privilege and then adjudicating that claim. ROA.123–129 (Protocol Order).[2] According to the Protocol Order, the Filter Team was required to segregate any material potentially subject to a claim of privilege. ROA.123. If the potential privilege claim belonged to someone other than Fluitt, the Filter Team was mandated to notify the third-party claimant and seek court authorization before disclosing the potentially privileged material to either Fluitt or the Prosecution Team. ROA.126 ¶ 5(c). The third party had fourteen days after receiving notice to object to disclosure or assert a claim of privilege. ROA.126 ¶ 5(c)(ii). If the latter action was taken, the third party's assertion of privilege was required to be accompanied by a privilege log detailing the allegedly privileged material and an explanation of the asserted privilege's application. *Id.* The Protocol Order imposed a meet-and-confer obligation on the Filter Team and the claimant. If the meet and confer proved fruitless, either the Filter Team or Fluitt could move to compel disclosure. ROA.126 ¶ 5(c)(iv)-(v). Although the Protocol Order did not expressly say so, it apparently contemplated that any motion to compel would be directed at the non-party claimant. *See* ROA.126 ¶ 5(c)(vi) (providing that claimant "shall file a response" within seven days of "the filing of a motion to compel").

On December 14, 2020, five days after the district court entered its Protocol Order, non-party HSE and non-party Satary were notified of its existence. A copy of the December 9, 2020, Protocol Order was emailed to counsel for Appellants. The Filter Team advised Satary that it planned to disclose to Fluitt the exact same materials it had disclosed in related prosecutions, which Satary had already objected to based on claims of

---

[2] A copy of the Protocol Order is appended to this opinion for ease of reference.

privilege.[3] In response, HSE provided privilege logs to the Filter Team in January and February 2021, asserting 24,819 claims of privilege in total. Satary filed a privilege log asserting 7,324 claims of privilege on February 2, 2021. Both Fluitt and the Filter Team found these privilege logs to be facially deficient as they made only threadbare assertions of privilege, e.g., "attorney-client communication" or "attorney work product," without any accompanying explanation. Satary refused to meet and confer with Fluitt and the Filter Team regarding their objections to his logs. HSE, on the other hand, did meet and confer with Fluitt, but ultimately refused to modify their logs or provide any additional information to support their assertions of privilege.

On July 9 and 14, 2021, Fluitt filed separate motions to compel against Satary and HSE, arguing that they had failed to carry their burden of establishing privilege and that their deficient logs should be interpreted as a waiver. The Government provided notice to the district court that Satary and HSE's privilege logs were deficient, but that it would not seek court authorization to disclose the potentially privileged materials. In October and November 2021, the magistrate judge (1) held hearings on Fluitt's motion, which the Filter Team and Prosecution Team and counsel for Satary and/or HSE attended; and (2) ordered supplemental briefing on a number of questions related to Appellants' status as non-parties before the court. HSE and Satary filed opposition memoranda in October and November 2021, respectively.

The magistrate judge subsequently entered an order directing the Government—not HSE or Satary—to disclose the potentially privileged

---

[3] Pursuant to discovery orders issued in other related genetic testing fraud prosecutions, in April 2020, the Filter Team notified HSE and Satary that it had identified potentially privileged material for its review.

material to Fluitt. HSE and Satary's principal argument in support of non-production was that, as non-parties to the criminal proceeding, they were not obligated to comply with the Protocol Order. Based on this position, the magistrate judge "accede[d] to HSE and Satary's refusal to be bound by, or subject to the Protocol entered in this case," "reformed" Fluitt's motions to compel to be directed against the Government, and held that HSE and Satary lacked standing to challenge Fluitt's motion. The magistrate judge held in the alternative that, even if HSE and Satary were properly before the court on this matter, their assertions of privilege would fail because their privilege logs were deficient under federal common law.

HSE and Satary jointly appealed the magistrate judge's order to the district court, which summarily affirmed. HSE and Satary timely noticed an appeal to our court. A motions panel of our court, like the district court, declined to stay the magistrate judge's order pending appeal. After Fluitt and the Government filed their response briefs, Satary absconded—he has been declared a fugitive by the Eastern District of Louisiana. Minute Entry, *Satary*, No. 2:19-CR-197 (E.D. La. Dec. 12, 2022), ECF No. 344.

## II. Standard of Review

"Discovery decisions are reviewed for abuse of discretion." *Williams v. Boeing Co.*, 23 F.4th 507, 514 (5th Cir. 2022) (citing *HC Gun & Knife Shows, Inc. v. City of Houston*, 201 F.3d 544, 549 (5th Cir. 2000)). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) (citing *Resol. Tr. Corp. v. Bright*, 6 F.3d 336, 340–41 (5th Cir. 1993)). Even if this court finds an abuse of discretion, it "will only vacate a court's judgment if the court's abuse of discretion affected the substantial rights of the appellant." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 261 (5th Cir. 2011) (citing *Marathon*

No. 22-30316

*Fin. Ins., Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 469 (5th Cir. 2009)).

## III. Discussion

### A. Jurisdiction

At the outset, the parties dispute whether we have jurisdiction to hear this interlocutory appeal. Because of the *Perlman* doctrine, we do.[4]

Title 28, United States Code, Section 1291 confers courts of appeals with jurisdiction to hear appeals from "final decisions of the district courts." The Supreme Court has "'generally denied review of pretrial discovery orders'" because "'the rule remains settled that most discovery rulings are not final.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108 (2009) (first quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981); and then quoting 15B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3914.23 (2d ed. 1992)). Instead, the typical route for a party to obtain immediate review of an adverse discovery order is to defy the order, be held in contempt, and appeal the contempt citation because contempt orders are immediately appealable. *Firestone*, 449 U.S. at 377 (citing *Cobbledick v. United States*, 309 U.S. 323, 327 (1940)). The so-called *Cobbledick* doctrine "has long been followed in this circuit." *In re Grand Jury Subpoena*, 190 F.3d 375, 382 (5th Cir. 1999) (citing *United States v. Grand Jury*, 425 F.2d 327 (5th Cir. 1970)).

The *Cobbledick* method of obtaining immediate appellate review does not work, however, when the individual or entity seeking review of an adverse discovery order is unable to put themselves in contempt. For instance, when an order directs a disinterested third party to disclose materials over the privilege assertions of a non-party, there can be no reasonable expectation

---

[4] *Perlman v. United States*, 247 U.S. 7 (1918).

that the disinterested third party will risk contempt to create an appeal for the privilege holder. In such a situation, the exception to the *Cobbledick* doctrine recognized in *Perlman v. United States*, 247 U.S. 7 (1918), may apply. "The *Perlman* exception has come to stand for the proposition that a party opposing a discovery order need not stand in contempt 'where the documents at issue are in the hands of a third party who has no independent interest in preserving their confidentiality.'" *In re Grand Jury Subpoena*, 190 F.3d at 382 (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 77 n.3 (1987) (Stevens, J., dissenting)). Under the *Perlman* doctrine, "a discovery order directed at a disinterested third party is treated as an immediately appealable final order because the third party presumably lacks a sufficient stake in the proceeding to risk contempt by refusing compliance." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 18 n.11 (1992) (citations omitted).

While the *Perlman* exception arises most commonly in our caselaw in a situation where a grand jury has subpoenaed documents from a third party over the objections of the target of the grand jury investigation, we see no reason why the exception would not also apply in this case. Fluitt has moved—as "reformed" by the magistrate judge—to compel production of materials in possession of the Government's Filter Team over non-party HSE's and non-party Satary's assertions of privilege. In both kinds of cases, the party holding the disputed materials is different from the individuals or entities asserting privilege and, importantly, does not share the privilege holders' interest in defying a court order. As that lack of interest is the "touchstone of the *Perlman* inquiry," the doctrine applies in this case.[5] *In re*

---

[5] The Government's argument that Satary and HSE have another means of redress, which we take to mean appellate review, because Satary and HSE are parties to the proceedings in the Eastern District of Louisiana does not follow. Satary and HSE cannot get appellate review of the Western District of Louisiana's adverse discovery order by seeking relief from the Eastern District of Louisiana.

No. 22-30316

*Grand Jury Subpoena*, 190 F.3d at 383 (citing *In re Grand Jury Proceedings in the Matter of Fine*, 641 F.2d 199, 201 (5th Cir. 1981)).

## B. Standing

The Government and Fluitt raise an additional challenge to the justiciability of this appeal: Satary and HSE's non-party status. Relying on "[t]he rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment," the Government and Fluitt argue that HSE and Satary should have sought "intervention for the purposes of appeal." Because they did not, the Government and Fluitt argue, HSE and Satary lack standing. However, both the Government and Fluitt acknowledge an equitable exception for certain non-party appeals, which in this circuit is evaluated under a three-factor test. The test asks "whether 'the non-parties actually participated in the proceeding[] below, the equities weigh in favor of hearing the appeal, and the non-parties have a personal stake in the outcome.'" *Searcy v. Philips Elecs. N. Am. Corp.*, 117 F.3d 154, 157 (5th Cir. 1997) (quoting *EEOC v. La. Off. of Cmty. Servs.*, 47 F.3d 1438, 1442 (5th Cir. 1995)) (citing *United States v. Chagra*, 701 F.2d 354, 358–60 (5th Cir. 1983)); *see also Castillo v. Cameron Cnty.*, 238 F.3d 339, 349 (5th Cir. 2001) ("In order to determine if a nonparty may properly appeal, this court has adopted a three-part test[.]").

All three of *Searcy*'s factors weigh in favor of permitting Appellants' non-party appeal. HSE and Satary participated in the discovery dispute below by asserting privilege, opposing Fluitt's motion to compel with briefing and oral argument, and appealing the magistrate judge's order to the district judge. The equities also favor appeal. Appellants have not engaged in any delay tactics or failed to assert their rights. True, Appellants have maintained that they are not bound by the Protocol Order, but they have nonetheless complied (somewhat) with the Order's requirements. The Government and

No. 22-30316

Fluitt point to the deficiencies with Appellants' privilege logs and their refusal to remedy them. But that goes to the question of whether Appellants have carried their burden to establish privilege, not whether they may assert their rights in the first place. Finally, the third factor, Appellants' personal stake in the outcome, is obvious. Appellants' alleged privilege will be breached by the district court's order. *See Chagra*, 701 F.2d at 359 n.6 (citations omitted). We find there is non-party appellate standing here.

## C. Mootness

Next, the Government argues that the appeal is moot because it has already turned over the disputed materials to Fluitt in response to the district court's order. The Government's argument rests on a misunderstanding of *Perlman*. It says that a *Perlman* appeal exists to allow review of an order that forces a party to choose between disclosing allegedly privileged material and defying the order and being held in contempt. Once disclosure has occurred, that choice no longer exists and "a *Perlman* appeal serves no function." That is incorrect. *Perlman* creates a path to appeal for persons who are not the target of turnover orders—persons who *never* face the choice between disclosure or contempt. To the extent the Government is arguing that the appeal is moot because the allegedly privileged materials have already been disclosed, we can still provide HSE and Satary effective relief by requiring the clawback of the disclosed materials or prohibiting their disclosure to the Prosecution Team. *See In re Avantel, S.A.*, 343 F.3d 311, 323–24 (5th Cir. 2003). The appeal is certainly not moot.

## D. Abscondence

As mentioned, Satary absconded sometime between the filing of Appellants' opening and reply briefs. Fluitt and the Government argue that Satary's appeal should be dismissed under the discretionary fugitive disentitlement doctrine. "It has been settled for well over a century that an

appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal." *Ortega-Rodriguez v. United States*, 507 U.S. 234, 239 (1993). There are "a number of justifications" for this rule. *Id.* at 242. The court may not be able to enforce its judgment against a defendant who is out of custody. *Id.* at 240. The dignity of the court is offended and the efficiency of the appellate process is impaired by the defendant's absence. *Id.* at 242. And the threat of dismissal may deter other defendants from absconding. *Id.*

Two of the rationales listed above favor applying the doctrine in this case, and two weigh against it. Satary's abscondence is offensive to the dignity of the Eastern District of Louisiana, where he is being prosecuted, and to the dignity of this court in which he has sought an appeal. Strict application of the doctrine may have some deterrent effect too. However, the enforceability of this court's judgment is not affected by Satary's absence. The district court's order directed the *Government* to disclose the disputed discovery to Fluitt, and this court's judgment may be enforced on remand regardless of Satary's presence. Additionally, the efficacy of the appeals process in this case is not significantly impaired by Satary's absence. Satary presented his principal arguments in his joint opening brief with HSE, and a reply brief is optional under the Federal Rules of Appellate Procedure. *See* Fed. R. App. P. 28(c). His arguments against disclosure are almost identical to HSE's,[6] meaning we can largely resolve Satary's arguments in

---

[6] Satary raises one additional Fifth Amendment argument—consisting of one paragraph and two citations. It is meritless. The Fifth Amendment is inapplicable to an order compelling the Government, not Satary, to turn over documents. *See Fisher v. United States*, 425 U.S. 391, 408 (1976) ("It is also clear that the Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when *the accused* is compelled to make a Testimonial Communication that is incriminating.") (emphasis added).

resolving HSE's. Balancing all of this, we decline to apply the fugitive disentitlement doctrine to Satary's appeal.

### E. Merits

Proceeding to the merits of the appeal, Appellants argue: (1) they are not bound by the Protocol Order, so they cannot be deemed to have waived privilege by failing to meet the Order's requirements; (2) in any event, Appellants' privilege logs were sufficient to establish their claims of privilege; and (3) Fluitt has not shown that he is entitled to the potentially privileged material. Each of these arguments fails.

*First*, Appellants' argument that the Protocol Order cannot oblige a non-party to submit a privilege log is a red herring. The magistrate judge "accede[d]" to the Appellants' refusal to be subject to the Protocol Order and instead considered Appellants' assertions of privilege insufficient under federal common law. In other words, the *Fluitt* Protocol Order was not the basis for the magistrate judge's decision.

"A [privilege holder] asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) (citations omitted). This burden is imposed by federal common law. *See In re Grand Jury Proc.*, 517 F.2d 666, 669–70 (5th Cir. 1975) (quoting *United States v. Woodall*, 438 F.2d 1317, 1327 (5th Cir. 1970) (en banc), *cert. denied*, 403 U.S. 933 (1971)). As "the [privilege holders] asserting the privilege," HSE and Satary "bear[] the burden of proof." *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (citations omitted). To the extent Appellants are arguing that the magistrate judge adjudicated their claims of privilege under standards only contained in the Protocol Order, they are incorrect. The magistrate judge evaluated Appellants' privilege logs under the standards established by federal caselaw.

No. 22-30316

There was no legal error in requiring the Appellants to sustain their assertions of privilege under these standards.

*Second*, the magistrate judge did not abuse her discretion in holding that Appellants' privilege logs failed to adequately substantiate their assertions of privilege. The magistrate judge found that Appellants' privilege logs "do not provide a description for the documents/emails to explain why each should be protected from disclosure." This is correct. The privilege logs list only the names of the parties to the document or communication, the date, the "file name" (the subject line if an email), and an assertion of privilege (e.g., "attorney client privilege" or "common interest doctrine"). As the magistrate judge explained, this is not enough information to assess whether the Appellants' assertions of various privileges are proper. For instance, attorney-client privilege only extends to confidential communications between an attorney and her client that were made in order to obtain legal assistance. *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 720–21 (5th Cir. 1985). The privilege can be broken if a third party is present. *Id.* (citations omitted). Appellants' privilege logs do not disclose the roles of the parties to the communications (attorney, client, neither), nor do they describe the nature of the communications (legal or non-legal) over which attorney-client privilege is asserted.[7] The magistrate judge did not abuse her discretion in concluding that this was insufficient to determine whether the privilege applies, and thus Appellants failed to carry their burden. *See id.* at 721 ("Without evidence of some kind, we cannot determine whether . . . the attorney-client privilege might properly be extended[.]");

---

[7] Appellants argue that some of the logged emails have "attorney client privileged and confidential" in the subject line. But even with respect to those emails, that information is insufficient to establish privilege. *See BDO USA*, 876 F.3d at 696; *Slocum v. Int'l Paper Co.*, 549 F. Supp. 3d 519, 523 (E.D. La. 2021).

*BDO USA*, 876 F.3d at 697 (citations omitted). So, too, with Appellants' assertions of attorney work product privilege and common interest privilege, which require a showing that the materials were prepared in anticipation of litigation, and that the communications were between co-defendants and their counsel, respectively. *Adams v. Mem'l Hermann*, 973 F.3d 343, 349 (5th Cir. 2020) (citing *In re Grand Jury Proceedings*, 601 F.2d 162, 171 (5th Cir. 1979)); *In re Santa Fe*, 272 F.3d at 710 (citations omitted). The privilege logs are silent as to these dispositive facts.

*Third* and finally, Appellants' assertion that Fluitt "has not shown a need for the documents" and has not "demonstrated any kind of relevancy" likewise fails. Appellants argue that Federal Rule of Criminal Procedure 17's requirements—that documents sought by subpoena be relevant, admissible, and requested with specificity—should apply. As an initial matter, the record does suggest that Fluitt "has a need" for the potentially privileged documents, at least as much of a need as must exist to compel the Government's disclosure to the defense in a criminal proceeding. Specifically, the Government determined that the potentially privileged materials were material to preparing Fluitt's defense and, therefore, that it was obligated to disclose the materials under Federal Rule of Criminal Procedure 16(a)(1)(E)(ii). Furthermore, Fluitt has not subpoenaed HSE or Satary for the potentially privileged documents. Instead, those documents are in the Filter Team's possession and Fluitt has moved for their disclosure over Appellants' assertions of privilege. Because the Government possesses the disputed documents and has determined that it must disclose them to Fluitt under Rule 16, Appellants' analogy to a Rule 17 subpoena is inapt. Accordingly, the magistrate judge did not abuse her discretion in failing to require Fluitt to make a showing of relevancy before she granted his motion to compel.

No. 22-30316

Appellants also argue that the Government possesses their potentially privileged material in violation of Federal Rule of Criminal Procedure 41(e)(2)(B) and the Fourth Amendment, and that it should not be allowed to disclose material not lawfully in its custody. The proper procedure for challenging the lawfulness of the original search and seizure, outside of a motion to suppress, however, is for "the person aggrieved" to file a Rule 41(g) motion "in the district where the property was seized." FED. R. CR. P. 41(g). Indeed, both HSE and Satary filed Rule 41(g) motions in the Eastern District of Louisiana contesting the Government's post-seizure retention of their materials. *See* Motion to Suppress, *Satary*, No. 2:19-CR-197 (E.D. La. Oct. 4, 2021), ECF No. 199; Motion for Return of Property, *Satary*, No. 2:19-CR-197 (E.D. La. Oct. 4, 2021), ECF No. 201. Despite the pendency of Fluitt's motions to compel, followed by the district court's orders granting those motions and refusing to stay disclosure to Fluitt, HSE and Satary never sought expedited consideration of the Rule 41(g) motions pending in Satary's Eastern District of Louisiana proceeding. Moreover, the Rule 41(g) motions were dismissed *without prejudice* when Satary absconded, *see* Order, *Satary*, No. 2:19-CR-197 (E.D. La. Dec. 20, 2022), ECF No. 346, and HSE did not appeal or seek other relief from that ruling. These Rule 41 arguments are not part of this interlocutory appeal from a discovery order; we decline to reach them.

We therefore affirm the magistrate judge's ruling that Appellants failed to establish their claims of privilege.

AFFIRMED.

14

Andrew S. Oldham, *Circuit Judge*, dubitante:

This case implicates DOJ's so-called "filter-team protocols." As far as I can tell, DOJ created those protocols in various guidelines that appear in § 9-13.420(E) of the Justice Manual. DOJ has submitted these protocols to magistrate judges and district judges in other parts of the country with mixed results. *Compare In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 183 (4th Cir. 2019) (holding magistrate judge unlawfully authorized filter team and its protocols) *and In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006) (holding district judge unlawfully authorized filter team and its protocols and emphasizing filter "teams present inevitable, and reasonably foreseeable, risks to privilege, for they have been implicated in the past in leaks of confidential information to prosecutors"), *with In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235, 1250 (11th Cir. 2021) (holding protocols at issue "suffer[] from none of the defects" identified in previous cases).

In this case, the Government executed a series of search warrants and seized thousands of documents from the Hurricane Shoals Entities ("HSE"). The Government later turned over terabytes of data to a DOJ "filter team," which in turn disclosed large swaths of it to prosecutors and defendants in this case and others. And the filter team arrogated to itself the power to review the seized documents for privilege. As a result, HSE was forced to assert privilege *after* its documents had been seized, spread across the Nation, and subjected to various protocol orders without notice to HSE or an opportunity to object. That is very different than the typical privilege dispute, which occurs *before* disclosure of the privileged document (or terabytes of privileged documents).

I have no idea what legal standards should apply to filter teams, which have no obvious foundation in the Federal Rules. I also have no idea how HSE

should have responded to the filter team after its documents had already been seized and distributed without its consent. Nor do I understand what standards we should use to review what happened in the district court. For all I know, the majority's judgment might be correct. Nevertheless, I have serious concerns about the majority's suggestion that this case should be evaluated under the plain, old rules that govern traditional discovery disputes and traditional privilege assertions. There is nothing traditional about filter teams.

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | |
| v. | * | No. 3:20-cr-00196-TAD-KLH |
| | * | |
| | * | |
| GEORGE M. FLUITT III | * | |

<u>**ORDER**</u>

Having considered the United States' motion requesting authorization and entry of a protocol to govern the disclosure of discovery material that have been or are potentially subject to claims of privilege by Defendant and third-parties, and for good cause shown,

**IT IS HEREBY ORDERED THAT**:

1.  The United States' motion is **GRANTED**, and the protocol set forth in Paragraphs 2-10, below (hereafter "Protocol"), shall govern the disclosure of discovery material that have been or are potentially subject to claims of privilege (hereafter "Potentially Protected Material") by Defendant and third-parties in this case.

2.  The Protective Order issued on November 12, 2020 (<u>Dkt. 17</u>) shall apply to any discovery material produced by the filter team established by the United States in this case (hereafter "Filter Team") to Defendant or a third-party pursuant to the Protocol.

22-30316.123

3. The Filter Team shall segregate the Potentially Protected Material from the Prosecution Team, unless a court order or the claimant entitled to assert the privilege authorizes the release of Potentially Protected Material to the Prosecution Team.

4. The Filter Team shall release discovery material that is not Potentially Protected Material for production to the Prosecution Team and Defendant.

5. The Filter Team shall produce Potentially Protected Material to Defendant under the following conditions:

    a. If Defendant is the privilege holder or is entitled to access the discovery material by virtue of a Joint Defense Agreement (JDA), Defendant shall receive a full copy of the discovery material in the same format as it was provided to the Filter Team. The discovery material shall be subject to the Protective Order in this case, as well as the Protocol, and may not be further disclosed or disseminated except as provided in this Order.

    b. If Defendant is the privilege holder of the discovery material, the Filter Team shall notify the Defendant before releasing any of Defendant's Potentially Protected Material to the Prosecution Team.

        i. <u>Contents of Notice</u>. The notice shall identify the Potentially Protected Material to be released and the anticipated date of release to the Prosecution Team, and a copy of the Protocol Order. The Filter Team shall also provide the Defendant with an electronic index of the Potentially Protected Material scheduled for release.

        ii. <u>Procedures for Objections to Production or Asserting Privilege Claims</u>. If Defendant objects to the Filter Team's release to the Prosecution Team or asserts a privilege claim to protect certain materials from being produced in discovery, the Defendant will notify the Filter Team of their position within fourteen (14) days of receiving the electronic copy of the Potentially Protected Material. The Defendant's objection will include a privilege log, setting forth the claim asserted - such as attorney-client privilege, work product

2

22-30316.124

doctrine protection, or other legally recognized claim - that precludes production for each document logged. The log shall also set forth the document title, subject matter, author(s), recipients(s), date, transmittal detail (if any), location of author(s) and recipient(s), and an explanation of the claim asserted against production. Defendant shall email a copy of his objection and privilege log to the Filter Team. If Defendant does not respond to the Filter Team's notice within fourteen (14) days, the Filter Team may move the Court for a finding that the Defendant has waived privilege claims.

iii. <u>Procedure for Non-Logged Potentially Privileged Material.</u> The Filter Team will release to the Prosecution Team the Potentially Privileged Material that Defendant does not include on the privilege log.

iv. <u>Meet and Confer.</u> After the Filter Team receives the Defendant's objection and privilege log, the parties shall have five (5) business days to meet and confer to try to resolve any areas of disagreement concerning the asserted privilege claim.

v. <u>Motion to Compel.</u> If the Defendant and Filter Team cannot come to an agreement as to the asserted claim(s), the Filter Team shall then have seven (7) business days from the date of the meet and confer to move to compel production of the disputed Potentially Protected Material. The Filter Team shall attach a copy of the Defendant's privilege log and a copy of the disputed material or document(s) along with its memorandum containing any factual or legal arguments.

vi. <u>Response to Motion to Compel.</u> Within seven (7) business days of the filing of a motion to compel, the Defendant shall file a response supporting his claim.

vii. <u>Reply Motion.</u> Any reply in support of the motion to compel will be due within five (5) business days of the responsive filing.

viii. <u>Permitted Use.</u> If the Court thereafter authorizes the Filter Team to release the disputed Potentially Protected Material to the Prosecution Team, the Court will retain jurisdiction to determine if, and under what circumstances, Defendant or the Prosecution Team may use the Potentially Protected Material at trial.

c. If Defendant is not the privilege holder of the discovery material or is not entitled to access the material by virtue of a JDA, before producing any of a third-party claimant's Potentially Protected Material to Defendant, the

3

22-30316.125

Filter Team shall notify the third-party claimant that their Potentially Protected Material will be produced as part of the discovery to Defendant, unless such notice would jeopardize an ongoing investigation. In that case, the Filter Team shall seek authorization from the Court as to how to release the Potentially Protected Material at issue to Defendant.

i. Contents of Notice. The notice shall identify the Potentially Protected Material to be produced, the anticipated date of production to Defendant, the criminal case number, and a copy of the Protocol Order. The Filter Team shall also provide the claimant with an electronic copy of the Potentially Protected Material scheduled for production.

ii. Procedures for Objections to Production or Asserting Privilege Claims. If a claimant objects to the Filter Team's discovery production to a Defendant, release to the Prosecution Team, or asserts a privilege claim to protect certain materials, the claimant will notify the Filter Team of their position within fourteen (14) days of receiving the electronic copy of the Potentially Protected Material. The claimant's objection will include a privilege log, setting forth the claim asserted - such as attorney-client privilege, work product doctrine protection, or other legally recognized claim - that precludes production for each document logged. The log shall also set forth the document title, subject matter, author(s), recipients(s), date, transmittal detail (if any), location of author(s) and recipient(s), and an explanation of the claim asserted against production. A third-party claimant shall email a copy of their objection and privilege log to Defendant and the Filter Team. If claimant does not respond to the Filter Team's notice within fourteen (14) days, the Filter Team will provide Defendant with information regarding the Filter Team's attempts to contact the claimant. Thereafter, Defendant may move the Court for a finding that the claimant has waived privilege claims.

iii. Procedure for Non-Logged Potentially Privileged Material. The Filter Team will release to the Prosecution Team and produce to the Defendant the Potentially Privileged Material that the claimant does not include on their privilege log.

iv. Meet and Confer. After the Filter Team receives the objection and required privilege log from the claimant, the parties shall have five (5) business days to meet and confer to try to resolve any areas of

4

22-30316.126

disagreement concerning the third-party's asserted privilege claim. The Defendant shall be given notice of the date and time of the meet and confer, and Defendant may participate through counsel.

v. Motion to Compel. If the parties cannot come to an agreement as to the third-party's asserted claim(s), the Filter Team (or Defendant if he objects) shall have seven (7) business days from the date of meet and confer to move to compel production of the disputed Potentially Protected Material. The moving party shall provide a copy of the third-party claimant's privilege log and a copy of the disputed material or document(s), along with their memorandum containing any factual or legal arguments. If the moving party is Defendant, the Filter Team will provide the disputed Potentially Protected Material to the Court *ex parte* for *in camera* review.

vi. Response to Motion to Compel. Within seven (7) business days of the filing of a motion to compel, the claiming party shall file a response supporting its claim.

vii. Reply Motion. Any reply in support of the motion to compel will be due within five (5) business days of the responsive filing.

viii. Permitted Use. If the Court thereafter authorizes the Filter Team to produce the disputed Potentially Protected Material to the Prosecution Team and to Defendant, the Court will retain jurisdiction to determine if, and under what circumstances, Defendant or the Prosecution Team may use the Potentially Protected Material at trial.

d. The Court retains jurisdiction to adjudicate any dispute or resolve any privilege claim asserted over the discovery material produced pursuant to the Protocol.

e. If Defendant or a third-party claimant fails to provide a privilege log to the Filter Team and/or Defendant sufficient to allow the reviewing party or the Court to determine the nature of the claim, or fails to meet and confer, the Court may determine that such actions constitute waiver of a claim.

f. If a privilege claim was asserted by a third-party and not later challenged by the Filter Team or Defendant, the Filter Team or the Court may direct

5

22-30316.127

Defendant or the Prosecution Team to return or destroy any items that were produced in discovery but remain subject to a non-challenged privilege claim. Under these circumstances, Defendant must return or destroy Potentially Protected Material at the request of the Filter Team unless they receive the Court's approval to retain the material.

6. Pursuant to Fed. R. Evid. 502(d), any Potentially Protected Material disclosed to a third-party or Defendant pursuant to this Protocol Order or subsequent disclosure order, shall not constitute, or be deemed, a waiver or forfeiture of any privilege claim in any federal or state judicial or administrative proceeding other than these federal proceedings.

7. The Government or Defendant shall have the right to present to the Court any document to determine if an exception, such as the crime-fraud exception, or a waiver, such as a subject-matter waiver, applies to the Potentially Protected Material. Production pursuant to this section shall not be grounds for a waiver argument by the Government or any other party pursuant to Fed. R. Evid. 502(d).

8. If any member of the Prosecution Team inadvertently reviews an item believed to be protected by the attorney-client privilege, work-product doctrine, or any other legally recognized privilege, the Prosecution Team member shall turn the item over to the Filter Team for resolution through the filter process. Inadvertent review shall not automatically disqualify the Prosecution Team member from this matter.

9. The notification and filing deadlines set forth in this Protocol may be extended based on the written agreement of the parties, or by any party requesting the same from the Court upon good cause shown.

6

10. The United States shall provide a copy of this order to all known potential third-party claimants within five (5) business day of the entry of the Order.

 

**DONE** and **ORDERED** in Chambers at Monroe this 9th day of December, 2020.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

7